UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:21-CR-220 (VAB) |
| | : | |
| v. | : | |
| | : | |
| MAHESH PATEL, | : | |
| ROBERT HARVEY, | : | |
| HARPREET WASAN, | : | February 23, 2023 |
| STEVEN HOUGHTALING, | : | |
| TOM EDWARDS, and | : | |
| GARY PRUS | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE UNITED STATES' MOTION *IN LIMINE* #2
TO EXCLUDE OR LIMIT
THE EXPERT OPINIONS OF TY LOPEZ AND GREGG COHEN**

In keeping with the mandate of *Daubert v. Merrell Dow Pharmaceuticals* and Federal

Rules of Evidence 401, 403, and 702, the United States respectfully requests that this Court

exclude or limit the proffered expert testimony of two individuals: Ty Lopez and Gregg Cohen.

Given that both Lopez's and Cohen's opinions are, at heart, merely attempts to justify

collusion based on its alleged procompetitive effects, they may be barred at the outset as

irrelevant and impermissible in this case of an alleged *per se* illegal market allocation. This

Motion *in Limine* #2, along with Motion *in Limine* #1 to Preclude Inadmissible "Procompetitive

Benefits" Evidence (filed by the United States concurrently herewith) provide ample legal

support for that conclusion, including from recent Second Circuit cases.

Additional, independent grounds exist to bar Lopez's and Cohen's opinions under the

Federal Rules and the *Daubert* standard. Cohen must be precluded from opining that the criminal

antitrust conspiracy with which Defendants are charged is accepted industry practice or

"reasonable," both of which would flatly contradict this Court's prior rulings and expected

instructions to the jury on well-established points of law. Any remaining opinions from Lopez and Cohen should then be strictly limited to the scope of their actual, first-hand knowledge—which, based on their disclosures, would not allow either witness to comment in any way on the facts of *this* case. Lopez and Cohen must not be allowed to extrapolate their personal experience to the unfamiliar facts and parties involved here without providing the kind of fully disclosed and reliable methodology that *Daubert* and Rule 702 demand, and which neither of them has provided.

Finally, to the extent Lopez or Cohen is allowed to testify as an expert, then Defendants must treat them as experts and provide full expert disclosures as required by the Federal Rules and Rule 26.2 which, to date, Defendants have explicitly and unjustifiably refused to do.

## BACKGROUND

On November 25, 2022, Defendants proposed to the Court a schedule of pretrial disclosures, including a date by which any party seeking to offer expert testimony in its affirmative case would provide expert disclosures pursuant to Federal Rule of Criminal Procedure 16. The date Defendants proposed was January 26, 2023. (Dkt. 251) The Court accepted Defendants' schedule on December 1, 2022. (Dkt. 255) Defendants have never sought continuance of that date (other than seeking one additional week before disclosure of their third and final proffered expert, which was granted), or suggested to the Government or the Court that they needed more time to make their disclosures.

On January 26, 2023, Defendants provided disclosures for two individuals, Gregg Cohen (attached as Exhibit A) and Ty Lopez (attached as Exhibit B).[1] For each, the disclosures consisted of: (i) a few pages summarizing the proffered expert opinions and (at least purportedly)

---

[1] The Government did not disclose any experts to be offered in its case in chief.

2

the bases and reasons therefor, and (ii) a résumé. Cohen numbered his opinions 1-4; Lopez did not number his opinions, but they appear in bullet-point form on pages 2-3 of his summary.

In brief, both Lopez and Cohen appear to be individuals with unspecified business experience within the aerospace industry, writ large. Cohen was, from 2000-2020, an employee of Honeywell, Inc. in its aviation subsidiary, BendixKing; previously, in the 1990s, he worked at AlliedSignal. Ex. A, p. 1. Lopez, currently Director for FTI Consulting, Inc., is a former Director of Programs & Requirements for Air Force One. Ex. B, p. 1.

Both indicate that they were involved in unspecified "projects" and "programs" involving use of unnamed outsource companies to service unidentified aerospace original equipment manufacturers ("OEMs"), and seek to opine on a variety of procompetitive benefits of restricting hiring and recruiting between such companies generally. Yet neither provides any details that would shed light on even the basic nature of that experience, such as which companies and what products/projects were involved. More importantly, neither Lopez nor Cohen appears to have any experience with the companies or projects involved in this case, even though they appear poised to apply their proffered opinions to them.

Defendants' disclosure problems were compounded a week later, on February 2, when Defendants disclosed a third expert, Dennis Carlton. Carlton claims to have performed many mathematical calculations and a regression analysis of victims' compensation and hiring trends across the aerospace industry, but failed to actually disclose any of his data, calculations, or results, other than in very summary, narrative form. The Government filed a motion to compel this information on February 17, 2023 (Dkt. 278). The Government began receiving at least some of the missing disclosures as of the time of the filing of this Motion *in Limine* #2, but has not been able to confirm their completeness.

3

Within a week of Defendants' last expert disclosure, on February 9, 2023, the

Government sent defense counsel a detailed list of the deficiencies in all three expert disclosures

pursuant to the rules of defense expert discovery (Fed. R. Crim. P. 16(b)(1)(C)(iii)), this

District's Standing Order on Discovery, and Rule 26.2). The Government tried and failed many

times over the ensuing days to get a substantive response from Defendants—made more urgent

with every passing day, as the deadlines for *Daubert* motions loomed—to no avail.

Finally, on February 16, 2023, counsel for Defendants responded by letter. With respect

to Lopez and Cohen, Defendants refused to make any of the demanded disclosures, save for the

same list of 30 webpages and websites that Lopez and Cohen claim to have relied upon in

reaching their conclusions. Many of the listed URLs are nothing more than the home landing

page for a corporation's entire website (https://www.[company].com), and none was linked to

any particular opinion of Lopez's or Cohen's. With respect to Carlton, Defendants claimed only

that some of his disclosures of data would be made "promptly" (and finally began making at

least some of those disclosures just before this Motion was filed). Defendants have not

responded at all regarding the timing of Rule 26.2 disclosures.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It states:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon sufficient facts or
> data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods
> reliably to the facts of the case.

While this is a "liberal standard of admissibility," *Nimely v. City of New York*, 414 F.3d

381, 395-96 (2d Cir. 2005), it is not an open doorway to speculation, unsupported conclusions,

and overbroad conjecture. District courts have a gatekeeping responsibility to ensure that the expert is qualified and that his or her testimony is relevant and reliable such that it will assist—not confuse or mislead—the trier of fact. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 590-93 (1993). *See also Major League Baseball Prop., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310-11 (2d Cir. 2008); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (district court is "charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'").

District courts must also be mindful of other federal rules that may militate against admitting an expert's testimony, consistent with the courts' goal of maintaining an efficient and orderly trial that is fair to all parties. Expert testimony that does not make any fact pertinent to the case at hand more or less probable may be precluded both as a failure of the relevance prong of the *Daubert* and Rule 702 analysis, as well as under Federal Rule of Evidence 401. *See Amorgianos*, 303 F.3d at 265. Expert evidence that is more prejudicial than probative under a Rule 403 analysis, or threatens to confuse the jurors, may likewise be excluded. *See Nimely*, 414 F.3d at 397 (noting "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations."); *Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc.*, No. 3:10-cv-437 (VAB), 2015 WL 5708541, *7 (D. Conn. Sept. 29, 2015) (excluding damages expert's lost profits calculation, which was based on "insufficient facts and an unreliable method and, therefore, would have an unduly prejudicial impact on a jury.").

Excluding an expert's opinion that fails on one or more of these requirements is a decision that "rests soundly with the discretion of the trial court and shall be sustained unless

'manifestly erroneous.'" *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (citation omitted).

## ARGUMENT

### I.     All Evidence of Procompetitive Benefits, Including Lopez's and Cohen's Opinions, Should be Barred from Trial.

Every word of both Lopez's and Cohen's opinions ultimately leads to one subject: procompetitive benefits, namely, the reasons why aerospace companies seek to restrict hiring and recruiting between one another, and the financial and other benefits they receive when agreeing to do so. The Government has filed a separate motion *in limine* to exclude this and other evidence of procompetitive benefits from trial. *See* United States' Motion *in Limine* #1 to Preclude Inadmissible "Procompetitive Benefits" Evidence (filed February 23, 2023).

As set forth in greater detail in Motion *in Limine* #1, no economic justifications are allowed in cases of *per se* violations of the Sherman Act. The only conceivable relevance of such evidence would be to establish a bona fide defense under the doctrine of ancillary restraints, meaning that the restraint of trade in question was subordinate and collateral to, and reasonably necessary to achieve the procompetitive benefits of, the predicate collaboration between alleged conspirators. Yet neither Lopez nor Cohen connects any procompetitive effects of the charged no-poach agreement to any "collaboration" between Defendants that could conceivably support any ancillary restraint defense in this case. Second Circuit case law unequivocally states that such stand-alone evidence of procompetitive benefits—in essence, evidence that collusion is beneficial to those who collude—may be barred entirely by pretrial ruling of the Court as irrelevant under Rule 402. *United States v. Aiyer,* 33 F.4th 97, 123-24 (2d Cir. 2022). The *Aiyer* court explicitly held that both fact and expert evidence is excludable on this ground. *Id.*

If Lopez and Cohen have no relevant opinions to offer, their opinions may also be excluded under Rule 702 for lack of "fit" with the matter to be tried. *See Daubert*, 509 U.S. at 591-92.

* * *

If the Court denies Motion *in Limine* #1, or grants it only in part, there are additional reasons to exclude or limit Lopez's and Cohen's opinions under the Federal Rules and the *Daubert* standard, a subject we turn to below.

## II.     Cohen's Opinion #3 regarding "Industry Practice" is Contrary to Law and Irrelevant, and Should be Excluded.

In his third proffered opinion, Gregg Cohen asserts that it is "industry practice" for OEMs that rely upon outsourced engineering services to "discourage their outsourcing suppliers from hiring from one another." Ex. A, p. 4. Cohen proceeds to describe his personal practice (at an undisclosed time and place) to, in essence, punish outsource suppliers who chose to recruit and hire from competing outsource suppliers by lowering their performance ratings and thereby decreasing their chances of winning bids for work from the (unspecified) OEM. *Id*. Cohen claims this is just one of the "strategies" used in the aerospace industry to "manage" cross-hiring between suppliers, although he does not explain what these other "strategies" may be, or who else uses them, or why. *Id*. at 5. Cohen insists, however, that these unknown "strategies" contribute to "success" for the OEM. *Id*.

As an initial matter, it appears that Cohen has no basis for any sweeping opinion about any such "industry" practice. The only discouraging of cross-supplier hiring that he describes

was done by him personally.[2] It is not even clear from Cohen's summary whether his personal view was an accepted corporate practice at Honeywell/AlliedSignal, or something that Cohen merely did on his own. Regardless, neither Cohen nor his former employers are an "industry."

Whether discouraging aerospace outsource suppliers from hiring from one another was Cohen's personal practice, his company's practice, or a widespread industry practice, it is not an excuse for unlawful behavior, and thus has no place at trial. As the Supreme Court held over a century ago, parties cannot "establish by proof a usage or custom…which, in their own interest, contravenes the established [] law. If they have been in the habit of disregarding th[e] law, this does not relieve them from the consequences nor establish a different law." *Vermilye & Co. v. Adams Express Co.*, 88 U.S. 138, 146 (1874) (in dispute over financial instruments, rejecting argument that government bonds in question were maintained as customary in the industry but contrary to law).

Courts in the Second Circuit have addressed this issue several times and follow the wisdom of *Vermilye*. In 1970, the Second Circuit considered an appeal from a district court's ruling that Smith Barney's failure to disclose its market-making role in securities exchanged was a violation of SEC Rule 10b-5. *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167, 1170 (2d Cir.

---

[2] Based on Cohen's disclosure, it appears that he may have engaged in conduct similar to that alleged in this case, or at least attempted to, from his position as the representative of Honeywell/AlliedSignal vis-à-vis its suppliers. *See* Ex. A pp. 4-5.

Whether Cohen communicated his philosophy regarding cross-hiring between suppliers to those suppliers, whether he reached or facilitated agreements with or between suppliers, and when this conduct occurred, is currently unknown. But any potential personal interest in the outcome of this case and bias is fair game for cross-examination, and the Government does intend to cross-examine Cohen on those subjects. *See United States v. Shyne*, 388 Fed. Appx. 65, 72 (2d Cir. 2010) (finding no error in allowing cross-examination of defense witness whose personal legal liability may have decreased if defendant were found not guilty; "the exposure of a witness' motivation in testifying is a proper and important function of…cross-examination.") (summary order), *quoting Davis v. Alaska*, 415 U.S. 308, 316-17 (1974).

1970). Smith Barney argued that "all brokerage firms had followed the same practice and had never thought such disclosure was required; moreover, the SEC had never prosecuted any firm for this violation." *Id.* at 1171. The Second Circuit rejected that argument and held that "even where a defendant is successful in showing that it has followed a customary course in the industry, the first litigation of such a practice is a proper occasion for its outlawry if it is in fact in violation." *Id*.

Similarly, the Southern District of New York rejected a defendant's argument that an accepted practice in the music industry was a defense to a criminal violation, namely, illegally reprinting copyrighted material. *United States v. Slapo*, 285 F. Supp. 513, 513-14 (S.D.N.Y. 1968). The court held: "Assuming, as the defendants allege, that 'fake books' have been accepted by the music industry without opposition, we have not yet reached the point, at least in this court's view, where an industry custom and practice serves to repeal criminal laws." *Id.*

More recently, in a fraud case in the Eastern District of New York, the district court precluded an expert's testimony because the defendant failed to disclose the expert's name and summary of testimony until the day of trial, in violation of the pretrial order. *United States v. Mahaffy*, No. 05-CR-613(S-3)(ILG), 2007 WL 1213738 (E.D.N.Y. Apr. 24, 2007). Significantly, in a footnote, the court noted: "Any testimony relating to industry practice would be precluded nonetheless because it is entirely irrelevant and improper. Industry practice is not a permissible defense to fraud." *Id.* at *3 n.5 (citing *Vermilye*, 88 U.S. at 146).

Even outside the Second Circuit, courts exclude "industry standard" and "common practice" evidence because it does not have any tendency to dispute that the practice in question is actually unlawful, and can confuse the jury on issues of law. *See United States v. Oldbear*, 568 F.3d 814, 819-21 (10th Cir. 2009) (rejecting evidence under Rules 401 and 403 that tribe

habitually permitted personal use of federal emergency assistance funds, deemed an "everybody-is-doing-it-defense" by the trial court; such evidence "does nothing to excuse" the conduct and risks confusing the jury with a "sideshow"); *United States v. Brookshire*, 514 F.2d 786, 789 (10th Cir. 1975) (rejecting defendant's complaint of selective enforcement, given that others in industry engaged in the same conduct; "custom and usage involving criminality do not defeat a prosecution for violation of a federal criminal statute."); *Burnett v. United States*, 222 F.2d 426, 427 (6th Cir. 1955) (excluding evidence relating to Army custom of allowing individuals to use government time and property to make personal items; "[n]o custom is a justifiable defense for violation of the criminal code of the United States.")

As this Court has already confirmed in its opinion denying Defendants' motion to dismiss, and should instruct the jury, agreements between competing employers to restrict competition for labor between them is a species of market allocation, a *per se* violation of Sherman Act Section 1. *See* Order, Dkt. #257, at 17 ("the alleged conduct is subject to *per se* treatment because it is properly pled as a market allocation") and 22 (the charged conduct "operates as 'an agreement between competitors at the same level of the market structure to allocate' the labor market 'in order to minimize competition.'"). Moreover, a common customer or other interested party that joins or facilitates such an agreement has engaged in the same illegal horizontal restraint. *Id.* at 33 (despite Company A's vertical relationship to co-conspirators in the services market, "the no poach agreement operates across the market in which the companies horizontally compete: the labor market."). If Defendants intend to use Cohen's Opinion #3 to argue or (more likely) merely imply to the jury that the more widespread the accused hiring and recruiting restrictions are in the aerospace industry, the less likely they are

illegal—and that is the only plausible use of Opinion #3—that directly contradicts established law.

Cohen's Opinion #3 is thus excludable on multiple grounds. It is irrelevant and, consequently, excludable under Rule 401, Rule 702, and *Daubert* for lack of "fit." *See Daubert*, 509 U.S. at 591-92. In addition, Rule 403 provides broad authority to trial courts to exclude expert opinions that will confuse issues before the jury, including by contradicting principles of law that the jury must use in its deliberations. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (expert testimony that "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it" does not aid the jury and should be excluded). Courts should exclude expert testimony that "give[s] the appearance that the court was shifting to witnesses the responsibility to decide the case….It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." *United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988), *quoting Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977).

III.     **Cohen's Opinion #4 regarding the "Reasonableness" of the Charged Conduct is Contrary to Law and Irrelevant, and Should be Excluded.**

In his fourth proffered opinion, Gregg Cohen asserts that it can be "reasonable" for an aerospace OEM "such as [Company A]" to limit its own hiring from an outsource supplier for various reasons of efficiency. Ex. A, p. 5. He opines that it is reasonable for an OEM to come to this conclusion on its own, but also by agreement with a competing employer firm. "[A]n agreement between an OEM customer and a supplier of outsource engineering services whereby the OEM agrees to refrain from hiring from the supplier for a certain time can contribute to the on-time completion of projects." Ex. A, p. 6.

11

The factual reasonableness of the no-poach conspiracy alleged in this case is not an issue to be tried. In its opinion denying Defendants' motion to dismiss the indictment in this case, the Court ruled that the conspiracy that Defendants are accused of joining "is subject to *per se* treatment" under the Sherman Act "because it is properly pled as a market allocation." Order, Dkt. #257, at 17. In elaborating on the *per se* rule, the Court noted that the rule forecloses consideration of the factual "reasonableness" of certain conduct:

> The *per se* rule recognizes that "[s]ome types of restraints . . . have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful *per se*." *Khan*, 522 U.S. at 10. … The "*per se* approach permits categorical judgments with respect to certain business practices," *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 289 (1985), such that **these restraints are "unreasonable and therefore illegal"** and do not require "elaborate inquiry as to the precise harm they have caused **or the business excuse for their use**," *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958).

*Id.* at 11-12 (emphasis added). The Court also cited the Second Circuit's admonition that "the Sherman Act does not make 'unreasonableness' part of the offense…." *Id.* at 42 (citing *United States v. Koppers Co.*, 652 F.2d 290, 294 (2d Cir. 1981)). In *Koppers*, the Second Circuit approved of the trial court's instruction to the jurors that explicitly removed "reasonableness" from their verdict: "if you find beyond a reasonable doubt that the defendant … became party to the conspiracy charged in the indictment, then you do not have to decide whether such conspiracy was reasonable or unreasonable because … an agreement among competitors to allocate customers and territories and not to compete for customers by submitting collusive bids is a per se violation of the Sherman Act." *Koppers*, 652 F.2d at 293, 295-96.

Cohen's Opinion #4, in which he claims at least part of the accused conduct is "reasonable," directly contradicts this Court's opinion, and clear Supreme Court and Second Circuit precedent, on a matter of law. It should be excluded in its entirety under *Daubert*/Rule

702 for lack of "fit," as well as under Rule 403. *See Bilzerian*, 926 F.2d at 1294, quoted *supra* at 10; *Scop*, 846 F.2d at 140 (excluding expert's opinion that "drew directly upon the language of the statute and accompanying regulations concerning 'manipulation' and 'fraud'…in essence, his opinions were legal conclusions that were highly prejudicial…."); *United States v. Hoskins*, No. 3:12cr238 (JBA), 2019 WL 5556092, *4-*5 (D. Conn. Oct. 28, 2019) (excluding corporate governance expert's opinion as to the meaning of "agency" and "control," which were terms the court would define for the jury); *Learning Care Group, Inc. v. Armetta*, No. 3:13-cv-1540(VAB), 2016 WL 3248178, *7 (D. Conn. June 12, 2016) (relying upon *Bilzerian* to exclude expert opinions as to which legal theories of recovery match with which monetary damages "because they are legal conclusions."); *Richard Parks Corrosion Tech.,* 2015 WL 5708541, at *7 (excluding expert's opinion under Rules 403 and 702 because "he uses a term ['lost profits'] with a legal definition, in a different way than the law defines it. The prejudicial nature of his testimony, therefore, cannot be cured properly on cross examination.")

Cohen's Opinion #4 does not become any more relevant if Defendants attempt to assert an ancillary restraint defense at trial. "Reasonableness" of a restraint is very different from the "reasonably necessary" prong of the ancillary restraint defense, despite superficial similarities in the terms. A restraint of trade may be deemed an ancillary restraint, and not *per se* illegal, if it is subordinate and collateral to, and "reasonably necessary" to achieve the procompetitive benefits of, a legitimate business collaboration. *See Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006); *Salvino*, 542 F.3d at 339 (Sotomayor, J., concurring); *Aiyer*, 33 F.4th at 115-16; *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986). Yet Cohen has offered no

13

opinion on that subject.[3] Rather, his Opinion #4 relates solely to the reasonableness of one type of hiring restriction in itself—i.e., the internal business reasons that a hypothetical OEM may use to justify restricting its own hiring. As discussed above, that opinion has no place in a case of alleged *per se* illegal collusion.

Moreover, Cohen discloses no expertise that could give rise to any opinion as to whether it was in fact "reasonably necessary" for Defendants or their employers to engage in the alleged conspiracy in order to conduct some legitimate, joint aspect of their businesses. As his disclosure makes clear, he is knowledgeable only with respect to broad aspects of the aerospace industry and the particular corner of that industry in which he worked. He has no experience of any kind with these companies, much less any insight into the particular, internal business processes at issue in this case.

Furthermore, there is no limitation of Cohen's Opinion #4 that will salvage its admissibility. First, Cohen's Opinion #4 cannot be saved by limiting its scope to the reasonableness of *unilateral decisions* by companies to restrict their own hiring or recruiting, as opposed to *agreements* between companies to restrict hiring and recruiting. The question of what is reasonable for any company to do in its unilateral business judgment is not relevant here. Surely Company A and other OEMs are free to make any number of decisions on their own about their businesses, whether reasonable or unreasonable, efficient or inefficient, good or bad.

---

[3] As the Government also points out in its Motion *in Limine* #1 to Preclude Inadmissible "Procompetitive Benefits" Evidence, Cohen's opinions relate solely to a hypothetical business relationship between an OEM and a supplier (a bilateral relationship) and the hypothetical procompetitive justifications for a hypothetical no-poach practice or agreement between those two parties. He has no opinion about the type of multilateral no-poach conspiracy alleged in this case, which includes, in substantial part, no-poach agreements *between* competing suppliers. He also offers no opinion on any "collaborations" within such a group that may support an ancillary restraint defense. His opinions are thus utterly divorced from the concept of, and cannot support a defense based on, the doctrine of ancillary restraints.

The jurors will not be asked to rate any company's independent business judgment. They will be asked to decide whether a conspiracy existed and the Defendants knowingly joined it.

Second, even if Opinion #4 were limited to the question of "efficiencies" of no-poach agreements in the eyes of OEMs (and not their "reasonableness") it fails for lack of relevance. The only OEM Defendant here (Defendant Patel, an employee of Company A) is not accused of entering into a bilateral agreement with a single Supplier to restrict hiring and recruiting; he is accused of joining a multi-firm conspiracy, involving five other Defendants at four Suppliers who, as charged, all agreed to restrict recruiting and hiring *between one another*, not just *between each Supplier and the OEM* (Company A). As the indictment alleges, Company A's agreement to restrict its own hiring and recruiting from one Supplier, Company B, is simply one of the means and methods of this broader conspiracy. Ind. ¶ 24. Cohen offers no opinion as to any "efficiencies" of multilateral no-poach agreements, or of no-poach agreements of any kind between outsource suppliers.

Even if limited in some manner, therefore, Cohen's Opinion #4 is unhelpful to the jurors. The opinion fails for lack of relevance and *Daubert* "fit," and also fails the balancing test of Rule 403. *See Daubert*, 509 U.S. at 591-92.

IV.    **Lopez's and Cohen's Remaining Expert Opinions Must Be Strictly Limited to Each Witness's Experience, and Not Applied to the Conduct at Issue in This Case.**

Both Lopez and Cohen claim experience working on (unspecified) aerospace industry supply chain and services matters in the course of their prior employment in the Air Force and at Honeywell/AlliedSignal, respectively. Neither describes any experience working for, or with, the OEM relevant to this case (Company A, as identified at Indictment ¶ 2) or the outsource engineering supply companies ("Suppliers") relevant to this case (Companies B-F, as identified at Indictment ¶¶ 4-9).

Exactly what kind of experience Lopez and Cohen *do* have in the aerospace industry remains a mystery. As noted above, when the Government demanded, pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C)(iii)), that Lopez and Cohen identify the parties and products/services that form the basis of their claimed experience, Defendants refused. The Government moves for an order compelling Defendants to provide this important information (Section V, *infra*). But Defendants' refusal is quite telling. If Lopez or Cohen had *any* experience of *any* kind working with Companies A-F, *any* Defendant, or *any* of the projects or products relevant to this case, it was in their interests to say so. And they have not said so.

If all Lopez and Cohen wish to do is tell the jurors about their firsthand experiences in the Air Force and at Honeywell/AlliedSignal, while the relevance of that testimony may be slight at best, the Government does not seek to exclude that testimony at this time (subject to the normal operation of the rules of evidence).[4]

It is *not* clear, however, that Defendants intend Lopez and Cohen to restrict their opinions in this way. To the contrary, both seem poised to extrapolate their experience with different companies and different products/services and apply it to the specific facts of this case, both explicitly and implicitly. Their disclosures are replete with observations about the practices of OEMs "*like* [Company A]" or "*such as* [Company A]," as well as the relationships between OEMs and "suppliers," a category that Lopez explicitly states includes Companies B-F. Ex. B ¶ 4. Both Lopez and Cohen speak categorically about "OEMs" and "suppliers" as monolithic

---

[4] For example, it may be the case that Lopez's or Cohen's testimony is actually better characterized as lay opinion under Rule 701, and not expert testimony under Rule 702. By the time either witness is scheduled to testify, several weeks into the trial, their testimony may also be cumulative and excludable under Rule 403, especially given its tangential connection, at best, to the facts at bar. The Government believes those and other evidentiary questions are best addressed if and when Defendants seek to have either of these individuals take the witness stand.

16

groups, incorporating Companies A-F. Moreover, their proffered testimony is not pitched at a level of generic observation about an industry, but rather the motives, internal priorities, processes, and practices of aerospace companies, in quite specific terms, with respect to project management, hiring, and recruiting.

Not a single line appears in either expert disclosure justifying Lopez and Cohen applying their personal experiences to unfamiliar people, companies, and business relationships. For example, what basis does Lopez have to believe that Companies B-F "share knowledge and information in order to propel [] project[s] forward" as a "collaborative relationship," as he suggests other, unnamed suppliers have done? Ex. B, ¶ 11. What basis does Cohen have to understand the safeguards and policies Company A may or may not have in place to handle attrition and disruption of services, described generically in Ex. A. p. 3, when he has never worked there? What basis does either have to conclude that one OEM is "like" another in all relevant respects, or to speak broadly about all characteristics of all "suppliers" and all aerospace "projects," which must number at least in the thousands? The disclosures reveal no basis and no methodology.

In sum, the unmistakable message from both proffered experts is: "I know from experience that at least one OEM/supplier in the aerospace industry acts in this manner, and so you can assume they all do." *Daubert* and Rule 702 require more than this blithe assumption.

While experts may rely upon their experience and knowledge to offer opinions, *Daubert* requires even nonscientific, "experience-based" experts to convince the trial court that they have a reliable basis to apply that experience to the facts of the case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999). In other words, experience is not a substitute for a methodology. A district court need not "admit opinion evidence that is connected to existing data only by the *ipse*

*dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Thus, if an expert witness relies "solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee notes (2000).

As the Eleventh Circuit stated in an oft-cited case, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express." (emphasis in original). In short, "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *United States v. Frazier*, 387 F.3d 1244, 1261, 1265 (11th Cir. 2004) (cleaned up) (affirming trial court was within its discretion to exclude opinion of otherwise qualified forensic investigator who said his opinion regarding physical evidence in violent crime case "was based on his experience, and on various texts in forensic investigation," but could not explain either, and his experience appeared to be limited to a single case). *See also* Mueller and Kirkpatrick, *Federal Evidence* (Fourth Ed.) § 7:10 (under *Kumho Tire*, an expert "must be able to say more than that his opinion rests on his particular experiences in some line of work or endeavor. He must provide information about the nature of that experience and must show how he has brought it to bear on the matter at hand.").

This Court has not hesitated to preclude or limit expert opinions like Lopez's and Cohen's, which reveal no basis to apply the expert's prior experience—even if well-established, in itself—to the specific case at hand. For example, in a civil rights case involving an altercation between the plaintiff and police, this Court excluded a toxicologist's (i) estimate of the blood

alcohol content of the plaintiff at the time of arrest based on extrapolation from his general knowledge of alcohol metabolism, and (ii) opinion that the plaintiff's consumption of alcohol "could have resulted in the altercation." *Miller v. City of New London*, No. 3:13-cv-619 (VAB), 2015 WL 2179773, at *4 (D. Conn. May 8, 2015). The problem was not a matter of expertise or experience. With respect to the first opinion, the problem lay in the lack of a "rigorous analytical connection" between the expert opinion and the plaintiff's particular case and, with respect to the second, the expert "offered no explanation of any techniques or methodologies by which he reached this conclusion," making his assertion "the epitome of 'mere ipse dixit.'" *Id.* The Court did allow the toxicologist to testify, but only to the general effects of high blood alcohol content levels, given his general experience with that subject in the field of toxicology. *Id.* at *5.

Similarly, this Court has excluded or limited other expert testimony whenever experts seek to extrapolate from the known to the unknown without any stated, reliable basis. *See Lassen v. Hoyt Livery, Inc.*, No. 13-cv-1529 (VAB), 2016 WL 7165716, at *11 (D. Conn. Dec. 8, 2016) (allowing testimony about nine plaintiffs whose records the expert analyzed, but excluding testimony about 38 drivers in plaintiff class where analysis was based on unsupported extrapolation; such extrapolation was not a method based on "good grounds"); *Learning Care Group*, 2016 WL 3248178 at *7-*8 (excluding expert's summary opinion that plaintiffs' damages were caused by defendants' actions; the opinion reveals no "specialized methodology, or even any analysis, to reach this conclusion.").

This is consistent with rulings in other cases in which even well-qualified experts have nonetheless had their opinions excluded for lack of any identifiable methodology other than their general experience with certain topics. *See, e.g., Ho v. Michelin N.A., Inc.*, 520 Fed. Appx. 658, 663-64 (10th Cir. 2013) (trial court did not abuse discretion in excluding opinions of tire expert

who claimed he knew that plaintiff's tire had a manufacturing defect based solely on his experience with tires of a competing company; plaintiff failed to "tie [the expert's] opinions to his experience in a meaningful way"); *Auto. Ins. Co. v. Electrolux Home Prod., Inc.*, No. 08-CV-00623(A)(M), 2010 WL 3655743, *7 (W.D.N.Y. Sept. 15, 2020) (excluding opinion of expert on clothes dryer safety because he could not "adequately explain how experience in inspecting other dryers supports his conclusion" as to the lint accumulation in the particular malfunctioning dryer at issue).

Based on the authorities cited above, the deficiencies in Lopez's and Cohen's opinions with respect to methodology are fatal to their ability to opine under Rule 702 in any way that goes beyond their personal, direct experience at Air Force One and Honeywell/AlliedSignal. Neither has offered any basis—other than the talismanic phrase "based on my extensive experience…" (Ex. A at 1; Ex. B ¶ 4)—to opine on the internal priorities, processes, and practices of Companies A-F, or of the industry as a whole, or suggest that their personal experiences are typical or generally applicable within the industry. Any attempt by Defendants to elicit such testimony, or by the witnesses to provide it, should be precluded.[5]

**V.     To the Extent the Court Allows Lopez and Cohen to Give Expert Testimony, Defendants Should be Compelled to Provide the Necessary Disclosures.**

If the Court allows any portion of Lopez's and/or Cohen's proffered expert opinions, the Federal Rules demand that the Government be allowed a fair opportunity to test their opinions on cross examination. That will require Defendants to cure the serious deficiencies in their expert disclosures.

---

[5] The Government believes this matter can be resolved through briefing and, if the Court allows, oral argument. In the alternative, the Court could hold a *Daubert* hearing. *See United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007) (noting that district courts have broad discretion regarding how and through what proceedings to test the admissibility of expert testimony).

Under the prior version of Federal Rule of Criminal Procedure 16(b)(1)(C)(iii),[6] Defendants were required to provide certain disclosures on January 26, 2023, when proffering Lopez's and Cohen's opinions. For each expert, Defendants needed to provide a summary that "describe[s] the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C)(iii).

Full expert disclosures are crucial to "minimize [] surprise…reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination at trial." *See id.*, Advisory Committee Notes to 1993 Amendment; *cited in United States v. Cruz*, 363 F.3d 187, 196 n.2 (2d Cir. 2004). If the expert's disclosures are faulty or missing, the result may be a lengthy, exploratory cross-examination of the expert in front of the jury, rather than a "focused" one, given that this may be the first time the opponent is learning the bases for the expert's opinion. Moreover, the Government should be afforded the opportunity to retain and prepare disclosures for an expert to rebut Lopez's and Cohen's opinions, which is difficult if not impossible without full disclosures.

In addition, the Jencks Act (18 U.S.C. § 3500) and Fed. R. Crim. P. 26.2 require both the government and defense to disclose any statements in their possession, made and signed or otherwise adopted by a witness that they present, if those statements are relevant to the subject matter of the witness's direct testimony. Expert witnesses are witnesses. The Government is aware of no law or rule that would exempt Defendants' expert witnesses from the disclosure

---

[6] Defendants were indicted on December 15, 2021. Rule 16 was amended as of December 1, 2022 to include more specific requirements for expert disclosures for both the government and defense, including with regard to their timing and contents. The Government does not believe the recent amendment affects any matter raised in this motion, however. Lopez's and Cohen's disclosures would be deemed deficient under both the new and old versions of the rule, when read alongside relevant case law.

requirements of Rule 26.2 simply because they are experts. Indeed, the Government routinely provides Jencks disclosures, such as notes and drafts, for its own experts in criminal cases.[7]

Defendants have failed to provide appropriate disclosures for Lopez and Cohen in three respects:

First, both Lopez and Cohen claim that "certain publicly available materials regarding [Company A] and its products" helped to form "[t]he bases for my testimony." Ex. A at 2; Ex. B. ¶ 4. Defendants have never provided or sufficiently identified these materials. Instead, by letter dated February 16, 2023, Defendants have simply referred the Government to a long list of websites and stated that the Government should, in essence, go fishing. This is not an appropriate disclosure. Several of those websites were listed only by the root page, meaning that the Government has *no idea* which of the hundreds if not thousands of individual pages within those websites contain the information on which Lopez and Cohen claim to have relied. In addition, Lopez and Cohen have done nothing to link any of these documentary/website materials with any particular opinion(s), which must also be remedied. *See United States v. Ferguson*, No. 3:06CR137 (CFD), 2007 WL 4539646, *2 (D. Conn. Dec. 14, 2007) (providing a mere list of an expert's sources is insufficient; "[a]bsent information that links specific sources to each of the

---

[7] In Defendants' letter of February 16, 2023, responding to the Government regarding their expert disclosures, Defendants stated that they intended to withhold unspecified expert communications as attorney work-product. Whether Defendants will rely upon that argument with respect to their Rule 26.2 disclosures is unclear; to date, they have refused to respond at all on that subject. In any event, the issue was resolved long ago by the Supreme Court: § 3500 (and thus, by extension, Rule 26.2) trumps attorney work-product protection. *See Goldberg v. United States*, 425 U.S. 94, 107-108 (1976); *United States v. Nobles*, 422 U.S. 225, 239-40 (1975). The Second Circuit has recently called the situation in *Nobles*—in which a criminal defendant resisted producing his own investigator's written reports of witness interviews, even though the defendant had called the investigator to the witness stand—the "archetypal example" of work-product waiver. *See New York Times Co. v. United States Dep't of Justice*, 939 F.3d 479, 495-96 (2d Cir. 2019).

experts' opinions, the government does not have the type of information envisioned by Rule 16(b)(1)(C) with which to prepare for cross-examining the experts.").

Second, despite Lopez and Cohen relying solely on their own personal experiences with aerospace manufacturers, suppliers, and projects to render their opinions in this case, Defendants have refused to provide any useful information about that experience with which to cross-examine the experts. Learning what companies and products or services were involved would potentially allow the Government to seek discovery from or concerning those parties. It may also allow the Government to demonstrate that the expert's experience is irrelevant, stated incorrectly, or shows his bias—all appropriate bases for an expert's cross-examination. Without these disclosures, that discovery will have to take place *during* the expert's cross-examination, which will undoubtedly prolong the proceedings.

Third, the Government has asked Defendants to state when they will provide Rule 26.2 disclosures for their experts, and reminded Defendants that the Government has been providing witness interview reports and Jencks/Rule 26.2 disclosures for its potential witnesses in the regular course of discovery. Defendants have not responded, despite repeated requests. While the Jencks Act and Rule 26.2 contemplate that such materials may be produced upon the completion of a witness's direct testimony, in some instances, doing so can be disruptive and lead to the need for mid-trial continuances. For expert witnesses, in particular, earlier disclosures—which could include substantial amounts of notes, calculations, draft analyses and summaries, etc.—are necessary to prevent this sort of disruption. Given that the Government is not withholding Jencks in that same manner, it is well within the discretion of the Court to order earlier production of Defendants' Rule 26.2 materials and avoid a potential mid-trial controversy. As this Court has noted, it has inherent authority to manage its docket with a "view toward the efficient and

expedient resolution of cases." *Sticht v. Wells Fargo Bank*, No. 3:20-cv-1550 (VAB), 2022 WL 267470, *7 (D. Conn. Jan. 28, 2022), *citing Deitz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016).

## CONCLUSION

For reasons set forth above, the United States respectfully requests that the Court enter an order as follows:

(1)     Excluding all the proffered opinions of Ty Lopez and Gregg Cohen, which relate to procompetitive justifications for the alleged conspiracy, on the grounds of irrelevance under Rules 401/403, Rule 702, and *Daubert* (as jointly requested in Motion *in Limine* #1);

(2)     Or, in the alternative,

    a.     Excluding Cohen's Opinion #3 and #4;

    b.     Provisionally allowing the remainder of Cohen's opinions (#1 and #2) and all of Lopez's opinions to be presented at trial, but strictly limited to each witness's first-hand experience and not extrapolated or applied to the facts or parties involved in this case; and,

(3)     To the extent the Court allows Lopez or Cohen to offer any expert opinion at trial, compelling Defendants to produce, within 72 hours of this order:

    a.     Identification of the particular portions of any websites relied upon by each expert as a basis or reason for their allowed opinion(s), and identification of the opinion(s) to which each of the materials relied upon relates;

    b.     Identification of any parties and products/services involved in any of Lopez's and Cohen's personal experiences that form the bases and reasons for any of their allowed expert opinion(s), and,

       c.       All disclosures under 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2,

including any applicable notes and draft summaries of expert testimony.

                        Respectfully submitted,

                        */s/ Carrie A. Syme*
                        CARRIE A. SYME
                        T. JAKOB SEBROW
                        TRIAL ATTORNEYS, NEW YORK OFFICE
                        U.S. Department of Justice, Antitrust Division
                        26 Federal Plaza, Room 3630
                        New York, NY 10278
                        Tel.: (646) 714-1906

                        DAVID T. HUANG
                        ASSISTANT UNITED STATES ATTORNEY
                        Federal Bar No. ct30434
                        United States Attorney's Office
                        District of Connecticut
                        157 Church Street
                        New Haven, CT  06510
                        Tel.: (203) 821-3700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2023, a copy of the forgoing MOTION *IN LIMINE* #2 TO EXCLUDE OR LIMIT THE EXPERT OPINIONS OF TY LOPEZ AND GREGG COHEN was filed electronically and served to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept filing on the Notice of Electronic filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Carrie A. Syme*
CARRIE A. SYME
TRIAL ATTORNEY, NEW YORK OFFICE
U.S. Department of Justice, Antitrust Division