## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. |
|  | : | 3:21-CR-220 (VAB) |
| v. | : |  |
|  | : |  |
| MAHESH PATEL, ROBERT HARVEY, | : |  |
| HARPREET WASAN, STEVEN | : |  |
| HOUGHTALING, TOM EDWARDS, and | : |  |
| GARY PRUS, | : |  |
|  | : | March 13, 2023 |
| *Defendants*. | : |  |
|  | : |  |

---

## DEFENDANTS' PROPOSED JOINT JURY INSTRUCTIONS

---

## JURY INSTRUCTION NO. 1
### ELEMENTS OF THE OFFENSE

The government alleges that "[b]eginning at least as early as 2011 and continuing until as late as September 2019," Defendants "knowingly entered into and engaged in a combination and conspiracy between and among each other, Companies A-F, and others … to suppress competition by allocating employees in the aerospace industry working on projects for Company A, specifically by agreeing to restrict the hiring and recruiting of engineers and other skilled-labor employees between and among Companies A-F in the United States."[1]  The government alleges that "[t]he combination and conspiracy engaged in by Defendants and co-conspirators was a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (Title 15, United States Code, Section 1).[2]

Section 1 of the Sherman Act makes *per se* unlawful certain categories of agreements that, because of their harmful effect on competition and lack of any redeeming virtue, are unreasonable restraints of trade.[3]  Naked agreements among horizontal competitors to allocate a labor market fall into one such category deemed to be *per se* unreasonable restraints of trade and therefore illegal, without consideration of the precise harm they have caused or any business justification for their use.[4]  The government alleges that Defendants violated the Sherman Act by entering into a naked, horizontal restraint to allocate the market for employees in the aerospace industry working on

---

[1]     Ind. ¶ 19.

[2]     *Id.*

[3]     *See, e.g.*, *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) ("To justify a *per se* prohibition a restraint must have manifestly anticompetitive effects, and lack . . . any redeeming virtue") (quotation marks and internal citation omitted).

[4]     *See, e.g.*, *United States v. Aiyer*, 33 F.4th 97, 115 (2d Cir. 2022) (describing horizontal price fixing conspiracies, allocating markets, and bid rigging as three practices subject to the rule of *per se* illegality); *United States v. DaVita Inc.*, 2022 WL 266759, at *8 (D. Colo. Jan. 28, 2022) (explaining that "naked no-hire agreements that allocate the market have been considered per se unreasonable as horizontal market allocation agreements").

projects for Company A, *i.e.*, Pratt & Whitney.

A naked restraint is one that has no purpose beyond suppressing competition.[5]

Horizontal restraints are those imposed between competitors at the same level of the market, which restrict the way in which competitors will compete with one another.[6]

In order to establish the offense of conspiracy to allocate the market for employees charged in the Indictment, the government must prove each of the following elements beyond a reasonable doubt:

*One*, that the charged *per se* market allocation conspiracy existed at or about the time alleged;

*Two*, that each Defendant knowingly—that is, voluntarily and intentionally—became a member of the conspiracy charged in the Indictment, knowing of its goal and intending to help accomplish it; and

*Three*, that the conspiracy occurred within the flow of, or substantially affected, interstate commerce.[7]

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt with respect to the Defendant you are considering, then you should find that Defendant guilty.

---

[5]    *See Polk Bros. v. Forest City Enterprises, Inc.*, 776 F.2d 185, 189 (7th Cir. 1985) ("If two people meet one day and decide not to compete, the restraint is 'naked'; it does nothing but suppress competition"); *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 20 (1979) (declining to apply *per se* analysis where "[t]he blanket license, as we see it, is not a 'naked restraint of trade with no purpose except stifling of competition'") (citation omitted).

[6]    Ruling and Order on Motion to Dismiss at 29, ECF No. 257 (quoting *NCAA v. Bd. Of Regents of Univ. of Okla.*, 468 U.S. 85, 99 (1984)).

[7]    *See, e.g.*, Final Jury Instructions at 16, *United States v. Lischewski*, Case No. 3:18-cr-00203-EMC, ECF No. 626 (N.D. Cal. Dec. 2, 2019) (adopting these three elements in substantially similar form in criminal case charging price-fixing conspiracy); Jury Instructions at 19, *United States v. Penn*, No. 1:20-cr-00152 (D. Colo. July 7, 2022), ECF No. 1421 (same, in price-fixing and bid-rigging case).

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt with respect to the Defendant you are considering, then you should find that Defendant not guilty.

### JURY INSTRUCTION NO. 2
### FIRST ELEMENT – EXISTENCE OF CONSPIRACY

The first element the government must prove beyond a reasonable doubt is the existence of a conspiracy which took the form of a naked agreement among horizontal competitors to allocate the market for employees in the aerospace industry working on projects for Company A that began in or about 2011 and continued until in or about September 2019.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.  It is a kind of "partnership in crime" in which each person found to be a member of the conspiracy is liable for all acts and statements of the other members made during the existence of and in furtherance of the conspiracy.[8]

The evidence need not show that the members entered into an express or formal agreement, that they met together, or that they directly stated what their object or purpose was, or the details of it, or the means by which the object was to be accomplished.  But the evidence must show that two or more persons entered into an agreement or a mutual understanding with a unity of purpose or a common design and understanding, or a meeting of the minds to try to accomplish a common and unlawful plan.[9]  Evidence that shows that alleged conspirators pretended to agree, or jokingly agreed, or merely engaged in wishful thinking does not suffice.[10]  However, if the agreement exists, whether

---

[8]  ABA Model Jury Instructions in Criminal Antitrust Cases, Ch. 3.D, Conspiracy Explained.

[9]  *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946) (jury properly finds conspiracy existed where it finds that "conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement").

[10]  Jury Charge, Tr. at 2135-36, *United States v. Aiyer*, No. 1:18-cr-00333JGK, ECF No. 180 (S.D.N.Y. Nov. 26, 2019).

the agreement is carried out or whether it succeeds or fails does not matter.[11]

Direct proof of a conspiracy may not be available.  A conspiracy may, however, be disclosed by the circumstances or by the acts of the members.  Therefore, you may infer the existence of a conspiracy from what you find the parties actually did, as well as from the words they used.  As I will explain more fully in a moment, mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy.  If actions were taken independently by them, solely as a matter of individual business judgment, without any agreement or mutual understanding among them, then there would be no conspiracy.[12]

A conspiracy may vary in its membership from time to time.  It may be formed without all parties coming to an agreement at the same time, knowing all the details of the agreement, or knowing who all the other members are.  It is not essential that all members acted exactly alike or agreed to play any particular part in carrying out the agreement.  The unlawful agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common and unlawful purpose.[13]

---

[11]     ABA Model Jury Instructions in Criminal Antitrust Cases, Ch. 3.D, Conspiracy Explained.

[12]     *See id.*; *see also* Post-Trial Jury Instructions at 38, *United States v. Best et al*, Case No. 3:20-cr-00028-VAB, ECF No. 1043 (D. Conn. Oct. 13, 2022); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (to prove antitrust conspiracy "there must be evidence that tends to exclude the possibility that the [defendants] were acting independently.").

[13]     ABA Model Instructions, Ch.3.D, Conspiracy Explained.

When considering whether alleged conspirators entered into an unlawful agreement, keep in mind that one company's employees cannot conspire among themselves. This is because a company, its officers, and employees are so closely related that they are deemed to share a common purpose and are considered by the law to be one actor. A single actor cannot violate Section 1 of the Sherman Act.[14]

---

[14]     *See* 3 Modern Federal Jury Instructions-Criminal § 58.01 (2022), Instruction 58-5 The Possible Parties to the Conspiracy.

# JURY INSTRUCTION NO. 3
## INDEPENDENT ACTION[15]

The antitrust law involved in this case is concerned only with joint action and agreements among competitors – not with actions taken independently by a single competitor.  The independent actions of a person or an entity can never constitute a conspiracy in violation of Section 1 of the Sherman Act.  Where one corporate entity independently sets the rules and policies for how it does business, the mere fact that others accept those terms in the course of doing business with that corporate entity does not generate the kind of concerted action sufficient to violate Section 1 of the Sherman Act.  A business may decide based on its own independent business judgment not to hire a person, for example, because the hiring of the person may affect business or customer relationships, but may not make that decision as part of an unlawful agreement with a competitor to allocate the labor market.

---

[15] *See Virgin Atl. Airways Ltd. v. Brit. Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (citing *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) ("Independent actions taken by an entity fall outside the purview of [Section 1]"); *Rule Coast to Coast Ent., LLC v. Coastal Amusements, Inc.*, No. CIV.A. 05-3977 MLC, 2005 WL 7979273, at *11-15 (D.N.J. Nov. 7, 2005) (plaintiff distributor unable to demonstrate reasonable likelihood of success of a Sherman Act *per se* price fixing conspiracy claim where defendant manufacturer's action in response to complaints from defendant-distributor was "anything other than a justifiable unilateral business decision"); *Toscano v. Pro. Golfers Ass'n*, 258 F.3d 978, 984 (9th Cir. 2001) (affirming district court's grant of summary judgment for the defendant PGA Tour in Sherman Act conspiracy case, where PGA Tour independently set the terms of the contracts for tournaments, and the local sponsors merely accepted them); *Beutler Sheetmetal Works v. McMorgan & Co.*, 616 F. Supp. 453, 456 (N.D. Cal. 1985) (granting motion for summary judgment by defendant union pension fund in a Sherman Act conspiracy case, where a union pension fund, under a policy of conditioning its mortgage financing of residential housing on the construction of the units by union craftspersons, made a demand that contractors not use nonunion labor and contractors acquiesced to the same to avoid termination); *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) ("Section 1 of the Sherman Act requires that there be a 'contract, combination . . . or conspiracy' . . . in order to establish a violation. . . . Independent action is not proscribed.") (citation omitted); *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984) ("[A]n internal 'agreement' to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police.").

**JURY INSTRUCTION NO. 4**

**FIRST ELEMENT— CONSPIRACY TO ALLOCATE A LABOR MARKET**

I also need to explain the concept of allocating a market.  It is possible, for example, to allocate a market for customers.  If two or more companies or individuals are competing for the same customers, it is unlawful for them to agree to divide the customers between or among themselves.  Such an agreement would undermine normal competition between them, such as wooing away customers from their competitors by making a better product or reducing the prices of their respective products.[16]

In this case, the government alleges that Defendants entered into an agreement and understanding with the purpose of unlawfully allocating employees in the aerospace industry working on projects for Pratt & Whitney in order to end meaningful competition for those employees.  A conspiracy to allocate a labor market is an agreement or mutual understanding between two or more competitors for employees not to compete with one another for the services of employees.  A conspiracy to allocate a labor market can take the form of a no-poach agreement, although not all no-poach agreements are market allocations subject to *per se* treatment.[17]  A no-poach agreement can constitute a labor market allocation that is *per se* unlawful where two or more horizontal competitors enter into a naked agreement not to solicit or hire each other's existing or prospective employees for the purpose of ending meaningful competition for those employees.[18]  As I already explained, the aim and result of every horizontal market allocation agreement, if successful,

---

[16]      *See* Jury Instructions at 18, *United States v. DaVita*, Case No. 1:21-cr-00229-RBJ, ECF No. 254 (D. Colo. Apr. 13, 2022).

[17]      Ruling and Order on Motion to Dismiss at 21.

[18]      *See* Jury Instructions at 19–20, *DaVita*; *Bogan v. Hodgkins*, 166 F.3d, 509, 515 (2d Cir. 1999) (no poach agreement was not a market allocation where it "does not allocate the market for agents to any meaningful extent.").

is the elimination of competition.[19]

To establish the existence of a conspiracy to allocate a labor market, the government must prove beyond a reasonable doubt: (1) the existence of a relevant labor market;[20] (2) an agreement between two or more competing employers to end meaningful competition between or among those employers for the services of each other's employees within that relevant market;[21]and (3) for the purpose of eliminating competition for labor within that relevant market.[22]  You may not find that an agreement to allocate the labor market for engineers and highly skilled employees working on Pratt & Whitney projects existed unless you find that an agreement was reached and the agreement sought to end meaningful competition for the services of those engineers and highly skilled workers.[23]

---

[19]      ABA Model Jury Instructions, Ch. 3.H, Horizontal Allocations.

[20]      *See Borozny v. Raytheon Techs. Corp.*, No. 3:21-CV-1657-SVN, 2023 WL 348323, at \*10 n.6 (D. Conn. Jan. 20, 2023) ("[I]t is an element of a *per se* case to describe the relevant market in which we may presume the anticompetitive effect would occur") (quoting *Bogan*, 166 F.3d at 515, and citing other cases that are in accord), *motion for reconsideration filed* (D. Conn. Jan. 27, 2023). *Modern Fed. Jury Instructions* Instr. 79-42 ("[I]f you find that there was an agreement among the defendants, and *if you also find that the defendants were competitors in the relevant market*, then you must find that the agreement was an unreasonable restraint of trade.") (emphasis added); *see also* Jury Instructions, *United States v. Harwin*, No. 2:20-cr-115-VMC-KCD-1 (M.D. Fla. Sept. 23, 2022), ECF No. 302 at 19 ("You must decide whether the single overall conspiracy charged—*a conspiracy to allocate or divide up radiation oncology and medical oncology services in the alleged geographical market*—existed between two or more conspirators.) (emphasis added); *id.* at 20 ("The first element the Government must prove is the existence of a conspiracy between actual or potential competitors to allocate *medical oncology treatments for cancer patients to Florida Cancer Specialists and radiation oncology treatments for cancer patients to 21st Century Oncology in Southwest Florida*.") (emphasis added).

[21]      *See* Defendants' Proposed Jury Instructions at 30, *United States v. Surgical Care Affiliates LLC ("SCA")*, Case No. 3:21-cr-0011-L, ECF No. 125 (N.D. Tex. Sept. 9, 2022).

[22]      *See* Jury Instructions at 19–20, *United States v. DaVita*, Case No. 1:21-cr-00229-RBJ, ECF No. 254 (D. Colo. Apr. 13, 2022) (instructing that "you may not find that a conspiracy to allocate the market for the employees existed unless you find that the alleged agreements and understandings sought to end meaningful competition for the services of the affected employees"); Ruling and Order on Motion to Dismiss at 17.

[23]      Jury Instructions at 19–20, *DaVita*; Proposed Instructions at 30–31, *United States v. SCA*; *Bogan v. Hodgkins*, 166 F.3d, at 515.

The government must prove, beyond a reasonable doubt, that the conspiracy to allocate the alleged labor market actually existed and existed at or about the time alleged in the Indictment.[24]   If you find that the conspiracy charged in the Indictment did not exist, you cannot find the Defendants guilty of conspiracy and you must acquit.   This is so even if you find that some conspiracy other than the one charged in the Indictment existed, and even though any other conspiracy you may find existed had a purpose and/or membership similar to the conspiracy charged in the Indictment.[25]  This is also so even if you find that the Defendants agreed to restrict hiring or recruiting, but did not do so for the purpose of allocating the labor market and ending meaningful competition.

The goal of a labor market allocation conspiracy, as opposed to an agreement to restrict hiring or recruiting that does not have the goal of allocating a labor market, is the elimination of competition for labor.[26]  Evidence that the restrictions not to hire or recruit had a different purpose, *e.g.*, to benefit or not impede projects for Pratt & Whitney and to ensure that the suppliers had the necessary talent to complete their assigned statements of work, has been admitted to assist you in deciding whether the agreement existed to allocate a labor market for engineers and skilled-labor workers as charged, or something else.  Such evidence may lead you to conclude that the Defendants never entered into the market allocation conspiracy charged in the Indictment or that they did enter into the market allocation conspiracy.[27]  The decision as to whether the government has proven beyond a reasonable doubt that the charged market allocation conspiracy existed is yours and yours alone.

---

[24]     Jury Instructions, *United States v. Harwin*, No. 2:20-cr-115-VMC-KCD-1 (M.D. Fla. Sept. 23, 2022), ECF No. 302 at 20 ("The first element the Government must prove is the existence of a conspiracy between actual or potential competitors to allocate *medical oncology treatments for cancer patients to Florida Cancer Specialists and radiation oncology treatments for cancer patients to 21st Century Oncology in Southwest Florida*.") (emphasis added).

[25]     Jury Charge, Tr. at 2134, *United States v. Aiyer*.

[26]     *Id.* Tr. at 2138; ABA Model Instructions Ch. 3H, Horizontal Allocations.

[27]     *See* ABA Model Instructions, CH.3.H, Horizontal Allocations; Defendants' Proposed Jury Instructions at 31, *United States v. SCA*.

As noted above, you must bear in mind that a business, and the people working for that business, has the right, acting independently, to choose which individuals it hires.  A business may decide not to hire certain individuals for any reason, including the impact on its business or customer relationships, as long as that decision results from an independent business judgment and not from an unlawful agreement with a competitor to allocate the market.[28]  Further, evidence of similarity of business practices of the Defendants and alleged co-conspirators, or the fact that individuals may have refrained from hiring or recruiting certain employees in a similar or identical manner does not alone establish an agreement to allocate a labor market, since such activities may be consistent with ordinary and proper behavior in a free and open market, or consistent with lawful practices ancillary to a legitimate business relationship.  The Defendants and alleged coconspirators may have had the same or similar hiring practices, and such conduct is not criminal unless you find it was done pursuant to an agreement between two or more competitors to allocate the labor market, as alleged in the Indictment.[29]

It also is not enough that the alleged conspirators simply met; discussed common aims, interests, or objectives; acted in similar ways; or perhaps helped one another.  Simply being present at the scene of an event or merely associating with certain people and discussing common goals and interests does not establish proof of a conspiracy.  The fact that the Defendants and others in the aerospace industry met or spoke frequently does not, by itself, prove that they ever formed an illegal agreement.  Further, a person who does not know about a conspiracy but happens to act in a way that advances some purpose of one does not automatically become a conspirator.[30]

---

[28]  3 Modern Federal Jury Instructions-Criminal § 58.01, Instruction 58-8 Proof of the Conspiracy—Conscious Parallelism; *see also* Jury Instructions at 25–26, *United States v. Penn*; Jury Charge, Tr. at 2137, *United States v. Aiyer*.

[29]  3 Modern Federal Jury Instructions-Criminal § 58.01, Instruction 58-8 Proof of the Conspiracy—Conscious Parallelism; *see also* Jury Instructions at 25–26, *United States v. Penn*.

[30]  *See* Post-Trial Jury Instructions at 38, *United States v. Best*.

Nevertheless, you may consider such facts and circumstances along with all other evidence in determining whether the alleged agreement to allocate the market for employees resulted from the independent acts or business judgment of the Defendant you are considering and alleged coconspirators freely competing in the open market, or whether it resulted from a conspiracy among or between two or more of them to allocate the market that the Defendant you are considering knowingly joined.

To prove an agreement, the government does not have to prove that all of the means or methods which were agreed upon to accomplish this goal were actually used. Nor does the government have to prove that all of the persons alleged to have been members of the claimed conspiracy were in fact members. What the government must prove is that the claimed conspiracy was knowingly formed; that it was formed with the intention to accomplish, by joint action, the unlawful objective of allocating the market for employees; and that the Defendant you are considering knowingly became a member of the conspiracy.[31]

---

[31]     ABA Model Instructions Ch.3D. Conspiracy Explained.

**JURY INSTRUCTION NO. 5**
**FIRST ELEMENT—SINGLE V. MULTIPLE CONSPIRACIES**

The government alleges that the Defendants and other alleged conspirators were all members of one, single, overall conspiracy to allocate the market for employees in the aerospace industry working on projects for Pratt & Whitney that began in or about 2011 and continued until in or about September 2019.[32]

You must determine whether this single, overall conspiracy, as charged in the Indictment existed, and if it did, whether each Defendant was a member of it.  You may judge the Defendants only on the conspiracy charged in the indictment.  You may not convict them of any other alleged agreement in the event you should conclude that any particular Defendant engaged in some other illegal agreement different from the charged conspiracy, even if that other agreement is similar in purpose to the agreement charged in the Indictment.  If you find that a Defendant was only a member of another conspiracy and not a member of the one charged in the Indictment, then you must acquit him.  This is so even if you find that some conspiracy other than the one charged in the Indictment existed, even though the purposes of both conspiracies may have been the same, and even though there may have been some overlap in membership.[33]

Whether there was a single unlawful agreement, many agreements, or no agreement at all, is a question of fact for you to determine in accordance with the instructions I am about to give you. When two or more people join together to further one common unlawful design or purpose, a single conspiracy exists.  A single overall conspiracy may vary in its membership from time to time and may include two or more separate agreements between or among its members, provided that the

---

[32]     *See also* Jury Instructions, *United States v. Harwin*, No. 2:20-cr-115-VMC-KCD-1 (M.D. Fla. Sept. 23, 2022), ECF No. 302 at 19 ("You must decide whether the single overall conspiracy charged—*a conspiracy to allocate or divide up radiation oncology and medical oncology services in the alleged geographical market*—existed between two or more conspirators.").

[33]     Jury Charge, Tr. at 2134, *United States v. Aiyer*.

participants in the separate agreements are joined together by their knowledge of the essential features and scope of the overall conspiracy and by their common goal.  In contrast, multiple conspiracies exist when there are separate unlawful agreements to achieve distinct purposes, even though the separate agreements may have participants in common and may have similar goals.[34]

You may find that there was a single conspiracy despite the fact that there were changes in membership due to withdrawal or additions of conspirators, or changes in the scope of conspiratorial activities, or both, so long as you find that some conspirators continued to act for the entire duration of the conspiracy for the single purpose charged in the Indictment.[35]  But proof of several separate agreements is not proof of the single, overall conspiracy charged in the Indictment unless one of the several agreements that is proved is part of the single conspiracy that the Indictment charges.

If you find that a Defendant was not a member of the conspiracy charged in the indictment, then you must acquit him even though he may have been a member of some other conspiracy. This is because proof that the Defendant was a member of some other conspiracy is not enough to convict.[36]

Whether there was a single, overall conspiracy, several separate illegal agreements, or no illegal agreement at all, is a fact for you to determine.[37]

---

[34]     *See* Post-Trial Jury Instructions at 36, *United States v. Best*; Jury Charge, Tr. at 2134, *United States v. Aiyer*.

[35]     Jury Charge, Tr. at 2134, *United States v. Aiyer*.

[36]     *See id; see also* Jury Instructions at 28, *United States v. Jindal*, Case No. 4:20-cr-00358-ALM-KPJ, ECF No. 111 (E.D. Tex. Apr. 14, 2022).

[37]     Final Jury Instructions at 27, *United States v. Lischewski*.

**JURY INSTRUCTION NO. 6**
**SECOND ELEMENT—KNOWINGLY JOINED**

The second element the government must prove beyond a reasonable doubt is that the Defendants knowingly joined the conspiracy to allocate a labor market as alleged in the Indictment. To act "knowingly" means to act deliberatively and purposefully, that is, a Defendant's act must have been the product of his conscious objective rather than the product of mistake, accident, negligence, carelessness, recklessness or some other innocent reason.[38]  Therefore, before you may convict a Defendant, the evidence must establish beyond a reasonable doubt that the Defendant joined the alleged market allocation conspiracy as charged in the Indictment that is, the alleged conspiracy to eliminate competition for the labor of engineers and skilled-labor workers working on projects for Pratt & Whitney, as opposed to some other purpose.[39]  In other words, the evidence must establish that each Defendant knowingly entered into the conspiracy with the intent to allocate the market for employees in the aerospace industry working on projects for Pratt & Whitney.[40]

---

[38]   Jury Charge, Tr. at 2455, *United States v. Usher*, Case No. 1:17-cr-0019-RMB, ECF No. 239 (S.D.N.Y. Nov. 8, 2018).

[39]   *See id.* ("[T]he evidence must establish beyond a reasonable doubt that the defendant you are considering joined the conspiracy to suppress and eliminate competition for the purchase and sale of Euro/United States Dollar in the United States and elsewhere by fixing, stabilizing, maintaining, increasing, and decreasing, and decreasing the price of, and rigging bids and offers for, Euro/United States Dollars in the global foreign currency exchange spot market, the FX market"); Jury Instructions at 16, *United States v. Jindal* ("[B]efore you may convict the defendant, the evidence must establish that the defendant voluntarily became a member of the conspiracy to fix pay rates, knowing of the conspiracy's goal and intending to help accomplish that goal—here, price fixing"); Jury Instructions at 28, *United States v. Penn* ("[B]efore you may convict a defendant, the evidence must establish that the defendant knowingly joined the conspiracy with the intent to advance the objective of the conspiracy—here, price fixing and bid rigging for broiler chicken products.").

[40]   *See* Jury Instructions at 21, *DaVita* (the second element requires proof that the "defendant knowingly entered into the conspiracy with the purpose of allocating the market applicable to that conspiracy"); *id.* at 21 (instructing the jury that the government must prove beyond a reasonable

If you find that a Defendant knowingly joined the conspiracy, then the Defendant is presumed to remain a member of the conspiracy and is responsible for all actions taken in furtherance of the conspiracy until the conspiracy has been completed or abandoned or until the Defendant has withdrawn from the conspiracy.

If Defendants entered into an agreement or understanding with the intent to allocate the market for employees working on projects for Pratt & Whitney, it is immaterial whether such an agreement or understanding was actually good for Defendants' companies or for the market as a whole. However, evidence of procompetitive benefits or lack of harm might be relevant to determining whether one or more Defendants knowingly entered into an agreement with the purpose of allocating the market.[41]

Your determination whether a particular Defendant knowingly joined the conspiracy must be based solely on the actions of that Defendant, as established by the evidence. You should not consider what others may have said or done to join the conspiracy. A Defendant's membership in the alleged conspiracy must be established by evidence of his own conduct—by what he said or did.[42] Mere association with one or more members of the conspiracy does not automatically make

---

doubt that defendants "intended to allocate the market for" employees with respect to each count); Jury Instructions at 17, *United States v. Jindal* (instructing the jury that the government need prove that the defendant "inten[ded] to fix prices by lowering pay rates"); Jury Charge, Trial Tr. at 2136, *United States v. Aiyer* ("What the government must prove is that the claimed conspiracy was knowingly formed; that it was formed with the intention to accomplish, by joint action, price fixing and bid rigging. …"); 3 Modern Federal Jury Instructions-Criminal § 58.01, Instruction 58-15, Intent to Restraint Trade—Horizontal Allocation of Markets (to prove criminal market allocation, government must establish beyond a reasonable doubt "that the defendant joined the conspiracy with the intent to unreasonably restrain competition"); *Ruan v. United States*, 142 S. Ct. 2370, 2376-77 (2022) (applying presumption of scienter where statute is silent on required mental state and applying mens rea to narcotics distribution statute necessary to separate wrongful conduct from otherwise innocent conduct).

[41]    Jury Instructions at 21–22, *United States v. DaVita.*

[42]    Jury Instructions at 17, *United States v. Jindal*; Jury Charge, Tr. at 2145, *United States v. Aiyer.*

a Defendant a member, and "accidentally parallel action" is insufficient to prove the specific intent to further a conspiracy.[43]  Indeed, a person may adopt policies identical to those of his competitors as long as such actions are the result of independent business decision, and not the result of an agreement or understanding among competitors.[44]  In determining whether a Defendant knowingly joined the conspiracy, therefore, you should consider whether the practices employed made sense in light of the industry conditions, and whether the benefits from those practices were dependent on other persons agreeing to do the same thing.[45]

In addition, mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.  Moreover, the fact that the acts of a Defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make that Defendant a member. Rather, a Defendant must have agreed to at least some of the purposes or objectives of the conspiracy with the intention of aiding the accomplishment of its unlawful goals.  It is not sufficient that the acts of a Defendant merely happened to further the purposes or objectives of the alleged market allocation conspiracy.[46]

In sum, the Defendants, with an understanding of the unlawful purpose of the conspiracy, must have agreed with others to accomplish that purpose.[47]

---

[43]     *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989).

[44]     Jury Charge, Tr. at 2136, *United States v. Aiyer.*

[45]     *Id.*, Tr. at 2137; Post-Trial Jury Instructions at 38, *United States v. Best.*

[46]     Jury Charge, Tr. at 2144, *United States v. Aiyer.*

[47]     *Id.*, Tr. at 2146.

**JURY INSTRUCTION NO. 7**
**THIRD ELEMENT—INTERSTATE COMMERCE**

The third element the government must prove beyond a reasonable doubt is that the conspiracy charged in the Indictment either occurred in the flow of interstate commerce or had a substantial effect on interstate commerce.  The term "interstate commerce" includes transactions of goods, services, people, or funds that moved or are moving across state lines.

The "interstate commerce" element can be satisfied in one of two ways.  First, you may find that the alleged conspiracy involved transactions in the flow of interstate commerce.  When such transactions are involved, the amount of commerce restrained by the conspiracy is of no significance. Second, the element is satisfied if transactions that occurred entirely within a state had a substantial effect on interstate commerce (or could have had a substantial effect on interstate commerce if the conspiracy had been successful).  For these intra-state transactions, the government need not precisely quantify the impact on interstate commerce, but it must show a "substantial effect."

It is a question of fact for the jury to determine whether the alleged conspiracy involved interstate commerce.  You must evaluate the "interstate commerce" element for the conspiracy as a whole and not for the Defendant individually or each individual act in furtherance of the conspiracy.[48]

---

[48]     Jury Instructions at 23, *United States v. DaVita*; ABA Model Instructions Ch.3.N., Interstate Commerce.

**JURY INSTRUCTION NO. 8**
**PROOF OF MOTIVE**

Proof of motive is not a necessary element of the crime with which the Defendants are charged.  Proof of motive does not establish guilt, nor does a lack of proof of motive establish that a Defendant is not guilty.  If the guilt of the Defendant is proved beyond a reasonable doubt, it is immaterial what the motive for the crime may be or whether any motive be shown, but the presence or absence of motive is a circumstance that you may consider in bearing on the intent of any Defendant.[49]  For example, here, the Government has alleged that the Defendants were motivated to enter into the alleged conspiracy to allocate the labor market in order to suppress employee wages. You may consider the evidence or the absence of evidence with respect to that alleged motive in determining whether the government has proven the elements of the offense charged.

---

[49]     Jury Charge, Tr. at 2148, *Aiyer*.

**JURY INSTRUCTION NO. 9**
**ANCILLARY RESTRAINTS**

If you find that the government has proven an agreement to allocate a labor market, specifically an agreement to restrict the hiring and recruiting of engineers and other skilled-labor employees working on projects for Pratt & Whitney in order to eliminate meaningful competition for such labor, then you should consider whether it was a naked agreement, as charged in the Indictment, or whether it was an ancillary agreement.

As I mentioned, only a naked agreement to allocate the market for employees qualifies for *per se* treatment.  As I have said, if you find that the government has not proven that a Defendant knowingly entered into an agreement that is *per se* unlawful, then you must acquit him.

An agreement to allocate the market for employees in a labor market is "naked" if it is one that has no purpose beyond suppressing competition.[50]  Such an agreement to allocate a market is distinct from an agreement that is ancillary to (that is, supportive of) a legitimate business purpose.[51]

---

[50]      *Borozny*, 2023 WL 348323, at *8; *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 306-07 (2d Cir. 2008); ("[F]or conduct to be illegal *per se*, it must fall within the narrow range of behavior that is considered so plainly anti-competitive and so lacking in redeeming pro-competitive value that it is presumed illegal without further examination.") (internal quotation omitted).

[51]      *See Aiyer*, 33 F.4th at 115–16 (distinguishing between whether a "restriction is a naked restraint on trade, and thus invalid, or one that is ancillary to legitimate and competitive purposes of the business association, and thus valid") (quoting *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006)); *DaVita*, 2022 WL 266759, at *2 ("Even an agreement that falls into a traditional *per se* category will not receive *per se* treatment under the Sherman Act unless it is a 'naked' rather than 'ancillary' agreement"); Antitrust Guidance for Human Resource Professionals at 3, DOJ Antitrust Division, FTC (Oct. 2016) ("Naked wage-fixing or no-poaching agreements among employers, whether entered into directly or through a third-party intermediary, are per se illegal under the antitrust laws. That means that if the agreement is separate from or not reasonably necessary to a larger legitimate collaboration between the employers, the agreement is deemed illegal without any inquiry into its competitive effects"); *Polk Bros.*, 776 F.2d at 190 ("The reason for distinguishing between 'ancillary' and 'naked' restraints is to determine whether the agreement is part of a cooperative venture with prospects for increasing output. If it is, it should not be condemned *per se*.").

Agreements that are ancillary to a legitimate business purpose are not *per se* unlawful.[52]

An agreement is ancillary when it is subordinate and collateral to a separate, legitimate business transaction, collaboration, or agreement and is reasonably necessary to achieving the pro-competitive purpose of that transaction, collaboration or agreement.[53]

A legitimate business transaction or agreement exists where there is a legitimate business collaboration, such as a business association, joint venture, or other similar productive business relationship.[54]   To be legitimate, the business relationship need not be a formal venture or association.[55]   The key is simply that the parties are engaged in some sort of productive relationship.[56]

A restraint is subordinate and collateral where it is serves to make the main transaction more

---

[52]   *See In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1013 (7th Cir. 2012) ("[I]f a joint venture has a legitimate business purpose, . . . the fact that as part of the venture the prices of the venturers are coordinated does not condemn it out of hand, but instead subjects it to scrutiny under the rule of reason. If the coordination is ancillary to (that is, supportive of) the legitimate business purpose of the venture, it may be permissible—a rule of reason question.").

[53]   *See Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1109 (9th Cir. 2021) (explaining that "a horizontal agreement is exempt from the per se rule" as an ancillary restraint if it meets two requirements: "the restraint must be (1) 'subordinate and collateral to a separate, legitimate transaction,' and (2) 'reasonably necessary' to achieving that transaction's pro-competitive purpose") (citations omitted); *Deslandes v. McDonald's USA, LLC*, 2018 WL 3105955, at *7 (N.D. Ill. June 25, 2018) ("Some horizontal restraints are *ancillary* to agreements that are procompetitive, usually in the sense of enhancing output (i.e., producing either a greater quantity of goods or a new good that would not otherwise exist).").

[54]   Ruling and Order on Motion to Dismiss at 23 ("the restraint will not be subject to the per se rule if it is ancillary to a legitimate business collaboration"); *United States v. Aiyer*, 33 F.4th 97, 115 (2d Cir. 2022) ("the "ancillary restraints doctrine . . . governs the validity of restrictions imposed by a legitimate business collaboration, such as a business association or joint venture." (quoting *Texaco*, 547 U.S. at 7); *id.* at 119 n.18 (ancillary restraints doctrine applies to "similar productive relationship[s]").

[55]   *Aiyer*, 33 F.4th at 119 n.18. (explaining that productive relationships need not be a *formal* venture for the ancillary restraints doctrine to apply).

[56]   *Id.* (doctrine applies to "productive relationship[s]").  *See also* Ruling and Order on Motion to Dismiss at 28–29 (describing the ancillary restraints doctrine as applying where there is "cooperat[ion]," "collaboration," or "coordination"); *Polk Bros.*, 776 F.2d at 190 (ancillary restraints doctrine applied where there was "productive cooperation").

effective in accomplishing its purpose.[57]  In that sense, the restraint must be related to the efficiency

sought to be achieved by the legitimate business relationship or agreement.[58]  To be subordinate and

collateral the restraint must not be the dominant purpose of the transaction, collaboration,  or

agreement.[59]

"Reasonably necessary" means that the restraint bears a reasonable relationship to the

success of a legitimate business transaction or collaboration.[60]  Stated simply, if the restraint *may*

contribute to the success of a legitimate business transaction or agreement, it is ancillary.[61]

Accordingly, you do not need to decide whether the alleged restraint actually contributed to the

success of the business transaction, collaboration, or agreement, as long as you find that it *could*

---

[57]    *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.,* 792 F.2d 210, 224 (D.C. Cir. 1986)
("The ancillary restraint is subordinate and collateral in the sense that it serves to make the main
transaction more effective in accomplishing its purpose.").

[58]    *Id*. (the "restraint imposed must be related to the efficiency sought to be achieved.").

[59]    *Timken Roller Bearing Co. v. United States*, 341 U.S. 593, 597 (1951).

[60]    *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 725 (6th Cir. 2019)
(rejecting standard that would provide that "only restraints that are *necessary* to a joint venture's
efficiency-enhancing purposes qualify as ancillary" and instead stating rule that "[a] restraint is
ancillary if it bears a *reasonable* relationship to the joint venture's success") (emphasis original)
(citing *Major League Baseball Props.*, 542 F.3d at 339–40 (Sotomayor, J., concurring)); *Rothery
Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986) ("To be ancillary,
and hence exempt from the per se rule, an agreement eliminating competition must be subordinate
and collateral to a separate, legitimate transaction. The ancillary restraint is subordinate and
collateral in the sense that it serves to make the main transaction more effective in accomplishing its
purpose"); *see also United States v. Manahe*, No. 2:22-CR-00013-JAW, 2023 WL 2289891, at *2
(D. Me. Feb. 28, 2023) ("[T]he Government says that for a restraint to be ancillary, it 'must be (1)
subordinate and collateral to a separate, legitimate transaction and (2) reasonably necessary to
achieving that transaction's pro-competitive purpose'") (quoting *Aya*, 9 F.4th at 1109); *Major
League Baseball Props.*, 542 F.3d at 340 n.9 (Sotomayor, J., concurring) (Whether efficiencies could
be obtained "in a substantially less restrictive manner is an inquiry that should generally be part of
a rule-of-reason analysis rather than part of a *per se* or quick-look approach.").

[61]    *Med Ctr. at Elizabeth Place*, 922 F.3d at 727 ("We follow the majority of Circuits and hold
that a joint venture's restraint is ancillary and therefore inappropriate for per se categorization when,
viewed at the time it was adopted, the restraint 'may contribute to the success of a cooperative
venture.'") (quoting *Polk Bros.*, 776 F.2d at 189).

have plausibly enhanced the legitimate business relationship.[62]   In addition, to be ancillary, the restraint need not be essential to the success of the legitimate business relationship, nor does it matter if there were less restrictive ways to further the transaction or agreement.[63]

Whether the alleged agreement was ancillary to the pro-competitive purposes of a legitimate business transaction is a question for you to determine in assessing whether the government has met its burden of proving beyond a reasonable doubt the existence of a naked, horizontal conspiracy to allocate engineers and other skilled-labor employees in the aerospace industry working on projects for Pratt & Whitney.   If you conclude that the government has failed to prove that the alleged agreement was naked, that is, that it was not ancillary to a legitimate business relationship or transaction, you must acquit.[64]

---

[62]   *Major League Baseball Props.*, 542 F.3d at 340 n.10 (ancillary restraints doctrine applies even where "[e]mpirical analysis could ultimately show that the anticompetitive harms from the challenged provisions outweigh any procompetitive benefits"); *Med Ctr. at Elizabeth Place*, 922 F.3d at 728 ("If the record in this case reveals a plausible way in which the challenged restraints contribute to the procompetitive efficiencies of the joint venture, then 'the possibility of countervailing procompetitive effects' is not remote and per se treatment is improper") (*quoting Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 294 (1985)).

[63]   *Major League Baseball Props.*, 542 F.3d at 340 n.9 ("Whether the externalities could be eliminated in a substantially less restrictive manner is an inquiry that should generally be part of a rule-of-reason analysis"); *id*. at n.11 ("a challenged restraint need not be essential").

[64]   *Med. Ctr. at Elizabeth Place,* 922 F.3d at 728 (defendants do not bear the burden to establish that a restraint is necessary because a "plaintiff must satisfy each element of the per se ... test")

**JURY INSTRUCTION NO. 10**
**VERTICAL RESTRAINTS**

Even if the government has proven the existence of an agreement to allocate the labor market,

application of the *per se* rule is inappropriate if the restraint is vertical rather than horizontal.[65]  In

other words, an economic restraint must be purely horizontal to qualify for *per se* treatment.[66]   If

you find that the government has not proven that a Defendant knowingly entered into an agreement

that is *per se* unlawful, then you must acquit him.

Vertical restraints are those that are imposed by agreement between firms at different levels

in the chain of production and supply,[67] such as between an entity that supplies labor and an entity

---

[65]     Ruling and Order on Motion to Dismiss at 29.

[66]     *See, e.g.*, *Beyer Farms, Inc. v. Elmhurst Dairy, Inc*., 35 Fed. App'x 29, 29 (2d Cir. 2002) (summary order) ("Had Beyer alleged a purely horizontal relationship between Elmhurst and Bartlett, Beyer would have alleged a per se violation of § 1 of the Sherman Act. Because Beyer did not so plead, its complaint was subject to scrutiny under the 'rule of reason.'"); *see also, e.g.*, *2238 Victory Corp. v. Fjallraven USA Retail, LLC*, 2021 WL 76334, at *5 (S.D.N.Y. Jan. 8, 2021) ("Because the Complaint describes a mixed vertical and horizontal relationship between Fjallraven and Netrush, any agreement . . . is not categorized as <u>per se</u> unlawful under the Sherman Act."); *Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346, 360 (S.D.N.Y. 2018) ("[H]orizontal agreements to set prices, which involve coordination between competitors at the same level of a market structure, are per se illegal. But vertical agreements, or agreements between parties at different levels of a market structure, are not.") (internal citation omitted); *In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 136 (D.D.C. 2016) (where the alleged agreement presents "a relationship that arguably has both horizontal and vertical aspects . . . . it should be analyzed under the rule of reason"), *amended on reconsideration sub nom. In re: McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 218 (D.D.C. 2017).

[67]     Ruling and Order on Motion to Dismiss at 29 (citing *Ohio v. Am. Exp. Co*., 138 S. Ct. 2274, 2284 (2018)).

that employs labor.[68]  If a restraint is solely vertical, or if it has both vertical and horizontal characteristics, it is not *per se* unlawful.[69]

Whether the alleged agreement to allocate the market for employees in the aerospace industry working on projects for Pratt & Whitney was a vertical restraint or included vertical components is a question for you to determine in assessing whether the government has met its burden of proving the existence of a naked, horizontal agreement to allocate a labor market.[70]  In evaluating the existence of a vertical restraint, you may consider whether the evidence has established that Pratt & Whitney is vertically related to each of the supplier companies in terms of the labor market.[71]

---

[68]     *Brown Shoe Co. v. United States*, 370 U.S. 294, 323 (1962) ("Economic arrangements between companies standing in a supplier-customer relationship are characterized as 'vertical'"); *Copy-Data Sys., Inc. v. Toshiba Am., Inc.*, 663 F.2d 405, 408 (2d Cir. 1981) (noting that "restraints imposed by a manufacturer or supplier upon its distributor retailer-customers, so-called 'vertical' restraints, can significantly benefit competition and are permissible unless they violate the rule of reason").

[69]     Ruling and Order on Motion to Dismiss at 31.

[70]     Ruling and Order on Motion to Dismiss at 36 n.4; *see* Trial Tr. at 1732, ECF No. 174, *United States v. Aiyer* (admitting expert testimony by defense that relationship between defendant and alleged co-conspirator "was effectively a vertical relationship"); *id.* at 1598, ECF No. 172 (rejecting Rule 29 motion at close of government's case based on alleged co-conspirators being in a vertical rather than horizontal relationship with defendant because "the jury could well conclude that in fact the members of the conspiracy were in a horizontal relationship in offering dollar/ruble pairs to customers and setting the price at which those dollar/ruble pairs would be offered to customers"); *see also Aiyer*, 33 F.4th at 122 n.23 (rejecting defendant's effort to relitigate verticality on appeal where "the jury heard arguments that this was not a horizontal price agreement among competitors and implicitly rejected those arguments as a factual matter with its verdict").

[71]     Ruling and Order on Motion to Dismiss at 33.

## JURY INSTRUCTION NO. 11
## NON-COMPETE AGREEMENTS[72]

In this case, you have heard evidence and testimony about non-compete agreements that certain employees entered into with their employers.  Non-compete agreements are agreements between an employer and employee that limit the employee for a period of time from working for a competitor or customer of the employer after the employee has left his job with the employer.

It is lawful for an employer to include a non-compete term in an employment contract. Courts in Connecticut recognize the legality and enforceability of non-compete agreements so long as the terms of the non-compete provision are reasonable.  In this case, there is no evidence that a court was ever asked to determine the reasonableness of the non-compete provisions you have heard about in testimony and seen as part of employment contracts that are in evidence.

---

[72] *See Tyco Healthcare Grp. LP v. Ross*, No. 3:11-CV-373 (CFD), 2011 WL 1790186, at *3 (D. Conn. May 10, 2011) (two-year non-competition agreement was valid, reasonable, and enforceable); *Minnesota Mining and Mfg. Co. v. Francavilla*, 191 F. Supp. 2d 270, 279 (D. Conn. 2002) (two-year non-competition agreement was enforceable against a fiber optics engineer); *Branson Ultrasonics Corp. v. Stratman*, 921 F. Supp. 909, 913 (D. Conn. 1996) (one-year non-competition agreement was reasonable and thus valid against an electrical engineer); *Cf. Ashfield Health LLC v. Jacobson*, No. 3:21-CV-00417 (VAB), 2021 WL 2784859, at *8 (D. Conn. July 1, 2021) ("the temporal and geographic scope of the Agreement . . . is both reasonable and valid"), *judgment vacated in part and appeal dismissed as moot*, No. 21-1717-CV, 2022 WL 12127087 (2d Cir. Oct. 21, 2022)*. Scott v. General Iron & Welding Co*., 171 Conn. 132, 138-39, 368 A.2d 111 (Conn. 1976) (holding that a noncompete covenant, which prohibited employee, for a period of five years after termination of his employment by employer engaged in business of fabricating and welding metals, from participation in management of the same type business within state, was reasonable in regard to size of area in which the restriction applied and was reasonable as to period of time).

**JURY INSTRUCTION NO. 12**
**TESTIMONY OF LAW ENFORCEMENT WITNESSES**

You have heard the testimony of law enforcement officials.  The fact that a witness may be employed by the federal, state, or local Government as a law enforcement officer does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that this testimony may be affected by a personal or professional bias or interest in the outcome of the case.  Evidence that a witness is based, prejudiced, or hostile toward the Defendants requires you to view that witness's testimony with caution, to weigh it with care, and subject it to close and searching scrutiny.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.[73]

---

[73]     Post-Trial Jury Instructions at 21–22, *United States v. Best.*

**JURY INSTRUCTION NO. 13**
**CO-CONSPIRATOR TESTIMONY**

Several witnesses called by the government, specifically, Frank O'Neill, Cindy Craycraft, and Paul Gardner, are seeking leniency from the government.  The testimony of a co-conspirator who provides evidence against a Defendant for immunity or leniency from punishment or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of an ordinary witness.  You, the jury, must decide whether the witness's testimony has been affected by any of those circumstances, or by the witness's interest in the outcome of the case, or by prejudice against the Defendants, or by the benefits that the witness expects to receive from the government.  After careful consideration, you may give the testimony of the co-conspirator witnesses such weight, if any, you feel it deserves.

You should never convict any Defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.[74]

---

[74]   Court's Instructions to the Jury at 7–8, *United States v. Architectural Prods. Co., Inc. et al*, Case No. 3:08-cr-02540-FM, ECF No. 110 (W.D. Tex. May 27, 2009).

**JURY INSTRUCTION NO. 14**
**DEFENDANT'S DECISION NOT TO TESTIFY (IF APPLICABLE)**

The Defendants did not testify in this case.  Under our Constitution, a Defendant has no obligation to testify or to present any evidence in his defense, because it is the government's burden to prove his guilt beyond a reasonable doubt.  That burden remains with the government throughout the entire trail and never shifts to the Defendant.  A Defendant is never required to prove that he is innocent.

You may attach no significance to the fact that the Defendants did not testify.  You are not to speculate as to why they did not testify or about what they might have said if they had elected to testify.  No adverse inference may be drawn by you because they did not take the witness stand. You may not consider this against the Defendants in any way in your deliberations in the jury room. You are to confine your deliberations exclusively to the question of whether or not—on the evidence actually before you—the government has established their guilt beyond a reasonable doubt.[75]

---

[75]     Post-Trial Jury Instructions at 22–23, *United States v. Best.*

**PROPOSED JURY INSTRUCTION NO. 15**
**GOVERNMENT AS A PARTY**[76]

You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality. The case is important to the government, for the enforcement of criminal laws is a matter of prime concern to the community. Equally, it is important to Mr. Patel, Mr. Harvey, Mr. Wasan, Mr. Houghtaling, Mr. Edwards, and Mr. Prus, who are charged with serious crimes.

The fact that the prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration. All parties, whether the government or individuals, stand as equals at the bar of justice.

---

[76] *See United States v. Brown*, 3:16-cr-00066 (VAB) (D. Conn. May 26, 2017), ECF No. 83 at 7.

## PROPOSED JURY INSTRUCTION NO. 16
## CONSIDER ONLY THE CHARGES[77]

[**IF APPLICABLE**]: Mr. Patel, Mr. Harvey, Mr. Wasan, Mr. Houghtaling, Mr. Edwards, and Mr. Prus are not charged with committing any crime other the charges I have described.  You have heard evidence of other acts allegedly committed by these defendants. But I want to emphasize to you now that you are not to consider that evidence for any other purpose and you are only to return a verdict as to the charges I have described.

---

[77] *See United States v. Brown*, 164-cr-66 (VAB) (D. Conn. May 26, 2017), ECF No. 83 at 12-13.

## PROPOSED JURY INSTRUCTION NO. 17
### MULTIPLE DEFENDANTS[78]

The indictment contains one count, which charges each of six defendants with the same crime.  You must, as a matter of law, consider each defendant separately, and you must return a separate verdict on *each* defendant.

In reaching a verdict, you must bear in mind that guilt or lack of guilt is personal and individual. Your verdict of guilty or not guilty must be based solely upon the evidence relevant to each defendant.

**[IF APPLICABLE]:** In addition, some of the evidence in this case was limited to one defendant. Let me emphasize that any evidence admitted solely against one defendant may be considered only against that defendant and may not in any respect enter into your deliberations as to any other defendant.

Your verdict as to each defendant, on each count, stands or falls upon whether the evidence in this case establishes guilt beyond a reasonable doubt against that defendant alone, and your verdict as to any defendant should not bear on your decision as to any other defendant.

---

[78] Modified from 1 Leonard B. Sand et al., *Modern Federal Jury Instructions Instruction* 3-5, 3-7; *See United States v. Usher*, 1:17-cr-00019 (RMB) (S.D.N.Y. Oct. 25, 2018), ECF No. 239 at 178 ("In reaching a verdict . . . you must bear in mind that guilt is individual, and your verdict as to each defendant must be determined separately with respect to each of them solely on the evidence or lack of evidence presented against that defendant or the defendant you are considering without regard to the guilt or innocence of anyone else. Each defendant is entitled to have his case decided on the evidence and the law applicable to him as if the defendant were being tried alone.").

**PROPOSED JURY INSTRUCTION NO. 18**
**COMMON COUNSEL AND COUNSEL COOPERATION**

You have also noticed throughout the trial that counsel for various defendants have consulted with each other and have divided the work of the trial in an effort to facilitate their presentation and to avoid duplication. The fact that defense counsel have consulted and cooperated with each other in the conduct of their defense is not to be considered by you as having any significance with respect to the issues in the case.[79]

The issue of whether or not any defendant has been proven guilty beyond a reasonable doubt is personal, and you should make a separate determination about whether the government has or has not proven each defendant guilty beyond a reasonable doubt on each count contained in the indictment. In making that judgment, you are to disregard entirely the circumstance that counsel for various defendants have worked together during the trial. It would be unusual and wasteful of time and effort if counsel did not share the burdens of the defense.

It is also proper and normal for each defendant to be represented by separate, independent counsel, and for all parties to have multiple attorneys and assistants involved. In a case of this length, this number of attorneys and assistants on both sides is not unusual. You should not let the number of representatives in the courtroom affect your consideration in any way.[80]

---

[79] Modified from 1 Leonard B. Sand et al., *Modern Federal Jury Instructions Instruction* 2-10.  *See also United States v. Usher*, ECF No. 239 at 178.

[80] *See United States v. Shapiro*, 3:15-cr-00155 (RNC) (D. Conn. June 1, 2017).

## JURY INSTRUCTION NO. 19
## STATUTORY IMMUNITY OF GOVERNMENT WITNESS[81]

You have heard the testimony of one or more witnesses who have testified under a grant of immunity. What this means is that the testimony of the witness may not be used against that witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order.

You are instructed that the government is entitled to call, as a witness, a person who has been granted immunity and that you may convict a defendant on the basis of such a witness' testimony alone, if you find that the testimony proves the defendant guilty beyond a reasonable doubt.

However, the testimony of a witness who has been granted immunity should be examined by you with greater care than the testimony of an ordinary witness. You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon a defendant in order to further the witness' own interests; for, such a witness, confronted with the realization that he can win his own freedom by helping to convict another, has a motive to falsify his testimony.

Such testimony should be scrutinized by you with great care and you should act upon it with caution. If you believe it to be true, and determine to accept the testimony, you may give it such weight, if any, as you believe it deserves.

---

[81] Adapted from 1 Leonard B. Sand et al., *Modern Federal Jury Instructions Instruction* 7-8 (1998) (citing *United States v. Santana*, 503 F.2d 710, 716 (2d Cir. 1974)). *See also United States v. Gleason*, 616 F.2d 2, 15 (2d Cir. 1979) ("testimony of certain types of witnesses may be suspect and should therefore be scrutinized and weighed with care, such as . . . those who have been granted immunity").

### JURY INSTRUCTION NO. 20
### OFFICER OR EMPLOYEE OF A CORPORATION

A person is responsible under the criminal law for unlawful acts he or she performs or causes to be performed on behalf of a corporation just as thought that act were performed on his or her own behalf.

A defendant who is an officer or employee of a corporation is not criminally responsible for the illegal acts of another officer or employee performed on behalf of that corporation merely because of the defendant's status as an officer or employee of the corporation.  A person is responsible under the criminal law for unlawful acts he or she performs or causes to be performed.[82]

---

[82] *United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008) ("[I]n order to prove conspiracy or aiding and abetting… the Government must show "more than evidence of a general cognizance of criminal activity, suspicious circumstances, or mere association with others engaged in criminal activity") (citing *United States v. Samaria*, 239 F.3d 228, 233 (2d Cir. 2001)).

**JURY INSTRUCTION NO. 21**
**THEORIES OF THE DEFENSE**

[*Defendants reserve their respective rights to propose a summary of the defense theories*

*depending on how the government presents its case-in-chief.*]

Respectfully submitted,

*/s/ Brian E. Spears*
BRIAN E. SPEARS (ct14240)
IVAN J. LADD-SMITH (ct30982)
LESLIE A. CAHILL (ct31242)
Spears Manning & Martini LLC
2425 Post Road, Suite 203
Southport, CT 06890
T: (203) 292-9766
F: (203) 292-9682
Email: bspears@spearsmanning.com

*Counsel for Mahesh Patel*

*/s/ Guy Petrillo*
GUY PETRILLO (pro hac vice)
CAELYN STEPHENS (pro hac vice)
LEONID SANDLAR (pro hac vice)
Petrillo Klein & Boxer LLP
655 Third Avenue 22nd Floor
New York, NY 10017
T: (212) 370-0330
Email: gpetrillo@pkbllp.com

PAUL MCCONNELL (ct29062)
71 Elm Street, Suite 20

New Canaan, CT 066840
T: (203) 344-7007
F: (203) 344-7009
Email: paul.mcconnell@familylaw.com

*Counsel for Robert Harvey*

*/s/ Marc A. Weinstein*
MARC A. WEINSTEIN (pro hac vice)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
T: (212) 837-6460
F: (212) 299-6460
Email: marc.weinstein@hugheshubbard.com

CRAIG A. RAABE (ct04116)
Izard, Kindall & Raabe LLP
29 South Main Street,
West Hartford, CT 06107
T: (860) 513-2939
F: (860) 493-6290
Email: craabe@ikrlaw.com

*Counsel for Harpreet Wasan*

*/s/ Richard F. Albert*
RICHARD F. ALBERT (pro hac vice)
ANDREW DENNIS DILLON (pro hac vice)
JORJA KNAUER (pro hac vice)
Morvillo, Abramowitz, Grand, Iason &
Anello P.C.
565 Fifth Avenue
New York, NY 10017
T: (212) 880-9560
F: (212) 856-9494
Email: ralbert@maglaw.com

PATRICK A. KLINGMAN (ct17813)
Klingman Law, LLC
280 Trumbull Street, 21st Floor
Hartford, CT 06013
T: (860) 256-6120
Email: pak@klingmanlaw.com

*Counsel for Steven Houghtaling*

*/s/ Craig A. Gillen*
CRAIG A. GILLEN (pro hac vice)
ANTHONY CHARLES LAKE (pro hac vice)
Gillen Withers & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, GA 30339
T: (404) 842-9700
F: (404) 842-9750
Email: aclake@gwllawfirm.com

MARC SIEGEL (pro hac vice)
Farmer Brownstein Jaeger Goldstein Klein &
Siegel LLP
235 Montgomery Street, Suite 835
San Francisco, California 94104
T: 415-795-2050
F: 415-520-5678
Email: msiegel@fbjgk.com

*Counsel for Tom Edwards*

*/s/ Audrey A. Felsen*
AUDREY A. FELSEN (ct20891)
Koffsky & Felsen, LLC
1150 Bedford Street
Stamford, CT 06905
T: (203) 327-1500
F: (203) 327-7660
Email: afelsen@aol.com

KENNETH ROSENTHAL (ct05944)
Law Office of Kenneth Rosenthal
One Audubon Street, 3d Fl.
New Haven, CT 06511
T:(203) 915-4235
F: (203) 306-3286
Email: krosenthal@gs-lawfirm.com

*Counsel for Gary Prus*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.    Parties may access this filing through the Court's CM/ECF system.

*/s/ Brian E. Spears*

BRIAN E. SPEARS (ct14240)