**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MAHESH PATEL, ROBERT HARVEY, HARPREET WASAN, STEVEN HOUGHTALING, TOM EDWARDS, and GARY PRUS,<br><br>*Defendants*. | : | Case No. 3:21-CR-220 (VAB)<br><br>April 27, 2023 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION FOR JUDGMENT OF ACQUITTAL AND SUPPLEMENTAL MOTION FOR ACQUITTAL**

Failing to respond to the central question posed by the Court, the government's Opposition (ECF. No. 593) ("Opp.") continues to press the flawed assertion that this Court should simply accept that a *per se* market allocation agreement has been sufficiently proven because the government has pleaded such an agreement. The government is simply wrong. As this Court previously ruled, agreements not to hire or solicit employees are not "categorically subject to *per se* treatment." *United States v. Patel et al.*, No. 3:21-CR-220 (VAB), 2022 WL 17404509, at *8 (D. Conn. Dec. 2, 2022) ("Order"). Instead, "determining whether a no poach agreement is a market allocation is highly fact specific." *Id.* at *10.[1] At this stage of this case, the issues are

[1] As the Court's Order observed, "[t]he parties have not identified, and the Court has not located, any case in which the Supreme Court or any Court of Appeals, including the Second Circuit, has found that agreements to not hire or solicit employees should be categorically subject to *per se* treatment." Order at *8. Depending on the context, "courts have found the rule of reason applies to a no hire or no solicitation agreement . . . or that either the *per se* rule or the rule of reason could apply to a no hire or no solicitation agreement." *Id.* Additionally, "courts regularly uphold no hire and no solicitation agreements under the rule of reason analysis." *Id.* Accordingly, the Court could not "predict with confidence that no hire or no solicitation agreements would be invalidated in all or almost all instances under the rule of reason, and no

whether the government's evidence has sufficiently established "a horizontal agreement to allocate employees in a specific labor market," *id.* at *10, and that each defendant knowingly joined the same. The government has not met its burden and, pursuant to Rule 29, a judgment of acquittal "must [be] enter[ed]." Fed. R. Crim. P. 29(a).

As the Court correctly observed during the hearing on Defendants' Rule 29 Motion, it cannot be that a defendant in a criminal case has fewer rights than one in a civil antitrust case. *See* Tr. 3151:13-22. In a civil antitrust case, a court may defer a ruling on the proper Section 1 standard at the motion to dismiss stage until, at the summary judgement phase, it can consider facts developed by the parties during discovery. In stark contrast, a criminal defendant has no opportunity to have the court weigh facts presented by both parties at the motion to dismiss stage because a court considers only facts alleged within the four corners of the indictment in deciding whether to apply the *per se* or rule of reason standard. As here, a criminal antitrust defendant has no pre-trial opportunity to demonstrate facts showing that a charged restraint falls outside *per se* categories or is subject to the ancillary restraints exception. It would indeed be a perverse sense of justice were a criminal defendant who is facing incarceration to enjoy fewer rights and opportunities to persuade a court that the facts do not support a *per se* standard than a civil defendant whose personal liberty is not at stake.

## I. The Government Has Not Met Its Burden to Prove Any Required Element of Count One.

The lack of evidence cited in the Opposition mirrors the absence of evidence presented at trial from which a juror could find that (i) the charged market allocation agreement existed; and (ii) each Defendant knowingly participated in the charged conspiracy. Importantly, the

hire and no solicitation agreements are not categorically plainly anticompetitive and lacking any redeeming virtue." *Id.* (cleaned up).

government's evidence does not permit a reasonable juror to find that the alleged agreement amounted to a naked, non-ancillary restraint. To the contrary, the record shows that any intermittent hiring restrictions that were the subject of sporadic communications were ancillary to the cooperative relationship between Pratt & Whitney and its outsource suppliers and among the outsource suppliers working together to serve their common customer.

The government's Opposition also conspicuously avoids focusing on whether and how its proof at trial meets the requisite Rule 29 standard. In fact, it is not until page 12 that it discusses the evidence at all and, even then, its discussion of the record is limited to a single paragraph. *See* Opp. at 12. It instead parrots its Opposition to Defendants' Joint Motion to Dismiss (ECF No. 216), arguing that the *per se* standard applies to no poach agreements, that the *per se* label does not warrant further inquiry into an agreement's anticompetitive effects, and that the ancillary restraints doctrine is an affirmative defense that may only be permitted under very limited circumstances. *See generally* Opp. at 2-11. But the Court addressed these arguments in its Order, at a stage where the Court was necessarily constrained to consider only the government's artful pleading, rather than actual facts. The Court need not revisit the government's pre-trial arguments now, but rather must assess the facts adduced at trial.

The government further argues (i) that this Court should ignore the government's failure to prove that the alleged restraint is a naked, non-ancillary market allocation; (ii) that Defendants remain locked into the *per se* framework; and (iii) that requiring the government to prove that *per se* treatment is warranted would be akin to "grafting [a] new element[ ]" onto *per se* offenses. Opp. at 5. But the government studiously ignores that, following denials of motions to dismiss, and after discovery, courts routinely determine that *per se* treatment is inappropriate and should not be submitted to a jury. *See, e.g., Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) (upholding

summary judgment rejecting claims of *per se* violation); *Aya Healthcare Servs. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1109 (9th Cir. 2021) (affirming decision below that rejected application of the *per se* standard following discovery); *see also In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21-CV-00305, 2022 WL 4465929, at *12 (N.D. Ill. Sept. 26, 2022) ("[B]ecause Plaintiffs have a plausible *per se* claim, the question becomes whether the evidence will establish that the non-solicitation agreements do, in fact, nakedly allocate the market for outpatient medical care employees. . . Such questions, however, must await development of the record."). Here, after weeks of trial, the government points to only six documents and four pages of trial testimony, all of which at best reflect isolated and episodic restrictions on hiring and recruitment among companies that provided outsourced engineering services to Pratt & Whitney (themselves only a narrow subset of the aerospace engineering industry). This evidence provides a woefully insufficient basis for a reasonable jury to find that Defendants entered into the charged market allocation agreement.

Moreover, even if the government had presented evidence sufficient for the jury to find that Defendants entered into a market allocation agreement (which it did not), it still would not be entitled to present its case to the jury on a *per se* theory of liability without proving that the alleged agreement was in fact a naked, non-ancillary one. *See Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986) (Bork, *J.*) (claim may not be evaluated under the *per se* standard unless it is a "naked" restraint of trade, which by definition refers to "agreements between competitors who cooperated in no other integrated economic activity.")[2]; Annotated Post-Trial Jury Instructions (ECF No. 456) at 54 (citations omitted) ("The Government bears the burden

[2] As the Seventh Circuit has observed, certain agreements or restraints that might appear anticompetitive standing alone are often found to be "reasonable" under the Sherman Act when they are ancillary to "a larger endeavor whose success they promote." *Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 189 (7th Cir. 1985).

of proving the charged agreement is not ancillary."). The government's attempt to escape this essential element of its burden – which it previously embraced, *see* Govt. Objections to Defs.' Proposed Jury Instructions (ECF No. 421) at 25 n.8 (acknowledging that "for purposes of this case only, the Government agrees to accept the burden of persuasion on any ancillary restraints defense, if that defense goes to the jury") – must be rejected. The government strays further from the law by mischaracterizing the ancillary restraints doctrine as an affirmative defense the proof of which may only be presented outside the government's case in chief. Opp. at 11 n.4. There is no authority for this assertion. Ancillarity may be established, as here, in the government's case in chief. *See also* Memorandum in Support of Defendants' Joint Motion for Judgement of Acquittal (ECF No. 579) at 58-62.[3]

In sum, because alleged no poach agreements are sometimes ancillary and not *per se* market allocations, the government may not, as here, (1) draft a misleading indictment that excludes any reference to the ancillary nature of an alleged restraint, (2) survive the motion to dismiss on that basis, (3) move, as it did here, to exclude any evidence that would prove an ancillary restraint, (4) present at trial plainly insufficient evidence of an overarching naked market

[3] The government is wide of the mark in arguing that the Rule 29 motion did not address whether the *per se* standard is applicable. *See* Opp. at 1. Defendants, in underscoring that the alleged *per se* market allocation has not been proven, including the lack of proof that the alleged agreement was not ancillary, put the applicable standard in issue. As the court observed in *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2018 WL 813895, at *1 (E.D. Pa. Feb. 9, 2018):

> [T]hese plaintiffs assert that the defendants waived their ability to challenge the *per se* rule by not filing a summary judgment motion to preclude application of the *per se* rule. In effect, they try to use summary judgment as a shield against any arguments that were not brought then. They assert this without citing to a single case, rule, or order from this Court requiring such a 'confirmation' at a given point in antitrust pleading or pretrial procedure. In fact, case law is to the contrary: this rule of reason or *per se* decision could be made up until the time of presenting jury instructions.

allocation agreement, and (5) proceed to the jury phase of the trial. To conclude otherwise would ignore the fundamental gate-keeping role of the Court on a Rule 29 motion.[4]

II. The Allegations in Paragraphs 23 and 24 of the Indictment Concerning the Alleged Limitations on Pratt's Hiring of QuEST Personnel Have Not Been and, as a Matter of Law, Cannot Be Proven.

The allegations in Paragraph 23 and 24 of the Indictment allege vertical restraints that must be analyzed per the rule of reason, as previously submitted. Asked to cite a case to the contrary, in oral argument, the government cited *C-E Minerals, Inc. v. CARBO Ceramics, Inc.*, No. 1:11-CV-02574-JOF, 2012 WL 13008801 (N.D. Ga. Mar. 14, 2012). That case is plainly inapposite. The dispute concerned "a straightforward raw materials supply agreement" between C-E Minerals, Inc. ("C-E"), which mined, processed, and sold to CARBO Ceramics, Inc. ("CARBO") a raw material, kaolin clay, which CARBO in turn used in its manufacture of ceramic proppants. *See id.* at *1, *5. At issue in the case was the parties' agreement that "CARBO will not enter into direct competition with C-E in the manufacture of calcined clay for general sale to refractory or other related industry, and that C-E will not enter into competition with CARBO in the manufacture or sale of ceramic proppants." *Id.* at *1. Additionally, the restraint was on both companies who were competing with one another in the broader market and had nothing to do with the supply of materials from one to the other. While agreeing that "[t]here are some exceptional circumstances which might move a horizontal agreement out of the *per se* category, such as entities working together to bring a new product to the market," *id.* at *5, the court rejected defendant's argument that the challenged provision constituted an ancillary restraint, explaining:

> The parties' Supply Agreement, however, does not fit this category. The Supply Agreement is a straightforward raw materials supply agreement. . . . That is, the Supply Agreement [and the challenged provision], in particular, are not required to guarantee the existence of ceramic proppants. . . . *There is no hint of partnership*

[4] The government argues that the absence of the restraint alleged here in the text of the MTAs is probative. Yet, none of the cases it cites holds that an ancillary restraint must be found in a contract.

> *or joint venture between CARBO and C-E.* To the contrary, theirs is an arms-length relationship.

*Id.* (emphasis added). Here, (i) whether the restraint was directly related to the services for which QuEST was engaged, and narrowly limited to the very employees who were engaged to perform those services, and (ii) where the evidence at trial has repeatedly demonstrated the existence of a cooperative, collaborative effort between Pratt & Whitney and QuEST (and Pratt's other outsource suppliers) to, *inter alia*, "bring a new [jet engine] to market," *id.* at 5, the government's citation is facially unavailing.[5]

III. The Government's Invitation to Delay Entry of Judgment of Acquittal Should be Swiftly Rejected.

Finally, the Court should also reject out of hand the government's claim that entering judgment now would be "improvident" or somehow "break . . . new ground." *See* Opp. at 12-14. Rule 29 instructs that courts "*must* enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a) (emphasis added). While judgments of acquittal at the close of the government's case-in-chief may be rare, courts have a duty to enter them in cases where the evidence cannot sustain a conviction. *See, e.g., United States v. Best*, 2022 WL 7102794 (D. Conn. Oct. 12, 2022) (entering judgment of acquittal on all counts against one defendant at the close of the government's case-in-chief). Indeed, courts have properly directed acquittals in cases where, as here, the evidence fails to sustain the aggressive use of criminal antitrust enforcement to break new ground and expand the government's powers under the Sherman Act. *See, e.g., United States v. General Electric Co.*, 869 F. Supp. 1285 (S.D. Ohio 1994) (granting Rule 29 motion at the close of the government's case in Section 1 prosecution);

[5] *See, e.g.*, Tr. 990:11-25 (testimony of Matthew Westergard confirming Pratt & Whitney's need for "extra help from its outsourcing companies" around time of "ramp[] up in production activities" related to "new geared turbofan engine"); *see generally* Harvey's and Wasan's Supp. Mem. of Law. in Supp. of Defs.' Joint Mot. for Judgment of Acquittal (ECF No. 579).

*United States v. Nippon Paper Indus. Co.*, 62 F. Supp. 2d 173 (D. Mass. 1999) (entering judgment of acquittal in Section 1 prosecution).[6] The government's policy agenda[7] – from which this flawed case sprung, *see* Opp. at 1 – is no reason for this Court to set aside its duty to enter judgment of acquittal in a case wholly lacking in evidence of a *per se* antitrust violation.

Nor is there any lawful basis for the Court to somehow "withhold any entry of judgment so that the Department of Justice may consider its appellate review options[.]" Opp. at 14. The government surely knows that "no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." 18 U.S.C. § 3731. That clause's application turns on the entry of acquittal, and "what constitutes an 'acquittal' is not to be controlled by the form of the judge's action," *see United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977), or any ministerial act of "entry of judgment." Opp. at 14. What matters, rather, is "whether the ruling of the judge, whatever its label, actually represents a resolution . . . of some or all of the factual elements of the offense charged." *Id.* at 571. If this Court determines that the evidence presented is insufficient to sustain a conviction, then its ruling will necessarily be "an order that is in effect an acquittal," and "18 U.S.C. § 3731 [will] preclude[] an appeal by the government." *United States v. Black Lance*, 454 F.3d 922, 924-25 (8th Cir. 2006) (dismissing government's

---

[6] *See generally* Leslie W. Jacobs and Geoffrey S. Mearns, *Lessons from United States v. True: Effective Use of Expert Testimony in Defending Criminal Antitrust Cases*, 13-SPG Antitrust 48, 48 n.1 (1999) ("[I]n all of those [criminal antitrust] cases filed during the five-year period from 1992 to 1997 that went to trial, individual defendants were convicted in only four cases but were acquitted in fifteen cases," and "[i]n another case, the trial court granted the defendants' motion for a judgment of acquittal at the close of the government's case pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure.").

[7] This case is one in a string of failed prosecutions based on the Antitrust Division's recently conceived campaign to criminalize no poach and non-solicitation agreements. *See generally* Ankush Khardori, "Is the Justice Department Incompetent?," *New York* (May 19, 2022) (reporting comments from the head of the Department's Antitrust Division that he was undeterred by "a series of high-profile losses for prosecutors in his office" and would not be joining "the chickenshit club"). The consequence of this misconceived and recklessly executed criminal enforcement policy have inexcusably visited the enormous stresses of criminal charges on the lives of Defendants and their families in this case and defendants in several other cases (two of which have proceeded to trial and resulted in acquittals).

appeal); *United States v. Ellison*, 722 F.2d 595 (10th Cir. 1982) (*en banc*) (vacating panel's entry of a stay of judgment of acquittal because "mandamus is an inappropriate remedy" in cases where "grant[ing] the relief prayed for would violate the double jeopardy clause of the Fifth Amendment"). Where, as here, the evidence cannot support a conviction, there is no basis in law for this Court to withhold its judgment in order to facilitate the government's "appellate review options." Opp. at 14.

## CONCLUSION

The "importan[ce]" of this case to the government, Opp. at 13, driven by an agency's policy-setting agenda, pales in comparison to what really is at stake here – the criminal jeopardy in which six innocent men have been placed by flawed charges that have not come close to being proven. Accordingly, Defendants, on the basis of their opening Memorandum, their Supplemental Memorandum, the oral argument on their Rule 29 Motion, and this Reply Memorandum, respectfully seek a judgment of acquittal.

Respectfully submitted,

/s/ Brian E. Spears
BRIAN E. SPEARS (ct14240)
IVAN LADD-SMITH (ct30982)
LESLIE A. CAHILL (ct31242)
Spears Manning & Martini LLC
2425 Post Road, Suite 203
Southport, CT 06890
T: (203) 292-9766
F: (203) 292-9682
Email: bspears@spearsmanning.com

*Counsel for Mahesh Patel*

/s/ Guy Petrillo
GUY PETRILLO (pro hac vice)
LEONID SANDLAR (pro hac vice)
CAELYN STEPHENS (pro hac vice)
Petrillo Klein & Boxer LLP

655 Third Avenue 22nd Floor
New York, NY 10017
T: (212) 370-0330
Email: gpetrillo@pkbllp.com

PAUL MCCONNELL (ct29062)
71 Elm Street, Suite 20
New Canaan, CT 066840
T: (203) 344-7007
F: (203) 344-7009
Email: paul.mcconnell@familylaw.com

*Counsel for Robert Harvey*

*/s/ Marc A. Weinstein*
MARC A. WEINSTEIN (pro hac vice)
KIRAN ROSENKILDE (pro hac vice)
RAQUEL GONORETZKY (pro hac vice)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
T: (212) 837-6460
F: (212) 299-6460
Email: marc.weinstein@hugheshubbard.com

CRAIG A. RAABE (ct04116)
Izard, Kindall & Raabe LLP
29 South Main Street,
West Hartford, CT 06107
T: (860) 513-2939
F: (860) 493-6290
Email: craabe@ikrlaw.com

*Counsel for Harpreet Wasan*

*/s/ Richard F. Albert*
RICHARD F. ALBERT (pro hac vice)
ANDREW DENNIS DILLON (pro hac vice)
JORJA KNAUER (pro hac vice)
Morvillo, Abramowitz, Grand, Iason & Anello P.C.
565 Fifth Avenue
New York, NY 10017
T: (212) 880-9560
F: (212) 856-9494

Email: ralbert@maglaw.com

PATRICK A. KLINGMAN (ct17813)
Klingman Law, LLC
280 Trumbull Street, 21st Floor
Hartford, CT 06013
T: (860) 256-6120
Email: pak@klingmanlaw.com

*Counsel for Steven Houghtaling*

*/s/ Craig A. Gillen*
CRAIG A. GILLEN (pro hac vice)
ANTHONY CHARLES LAKE (pro hac vice)
Gillen Withers & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, GA 30339
T: (404) 842-9700
F: (404) 842-9750
Email: cgillen@gwllawfirm.com

MARC SIEGEL (pro hac vice)
Farmer Brownstein Jaeger Goldstein Klein & Siegel LLP
235 Montgomery Street, Suite 835
San Francisco, California 94104
T: 415-795-2050
F: 415-520-5678
Email: msiegel@fbjgk.com

*Counsel for Tom Edwards*

*/s/ Audrey A. Felsen*
AUDREY A. FELSEN (ct20891)
Koffsky & Felsen, LLC
1150 Bedford Street
Stamford, CT 06905
T: (203) 327-1500
F: (203) 327-7660
Email: afelsen@aol.com

KENNETH ROSENTHAL (ct05944)
Law Office of Kenneth Rosenthal
One Audubon Street, 3d Fl.

New Haven, CT 06511
T:(203) 915-4235
F: (203) 306-3286
Email: krosenthal@gs-lawfirm.com

*Counsel for Gary Prus*

## CERTIFICATION OF SERVICE

I hereby certify that on April 27, 2023, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: New York, New York
April 27, 2023

/s/ Leonid Sandlar
Leonid Sandlar (pro hac vice)
Petrillo Klein & Boxer LLP
655 Third Avenue 22nd Floor
New York, NY 10017
T: (212) 370-0330
Email: lsandlar@pkbllp.com